# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00073-CV

**Skilled Craftsmen of Texas, Inc., Appellant**

**v.**

**Texas Workers' Compensation Commission and Richard F. Reynolds,
Executive Director, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN300684, HONORABLE PETE LOWRY, JUDGE PRESIDING

## O P I N I O N

The issue in this case is whether portions of the Texas Hazardous Employer Program (the Program) that call for the designation of hazardous private employers are preempted by the federal Occupational Safety and Health Act (OSH Act). Appellant, Skilled Craftsmen, argues that the Program is preempted because it allows appellee, Texas Workers' Compensation Commission (the Commission), to implicitly regulate occupational health and safety standards already addressed by the OSH Act. The district court held that the Program is not preempted by federal law and that it is administered pursuant to valid rules. Because we agree with Skilled Craftsmen, we reverse the district court's ruling and render judgment that the Program is preempted by the federal law.

**BACKGROUND**

**The Hazardous Employer Program**

The Workers' Health and Safety Division (the Division) of the Commission is statutorily directed to develop a program that identifies hazardous employers and analyzes injury frequency. Tex. Lab. Code Ann. § 411.041(b) (West Supp. 2004-05). The Division determines that an employer is hazardous when its rate of workplace injuries exceeds the rate reasonably expected for its business or industry. *See* 28 Tex. Admin. Code § 164.1 (2004). To effectively identify hazardous employers, the Division developed a formula that compares an employer's normalized injury rate with the expected injury rate for that type of employer; if the ratio of normalized to expected injuries exceeds a pre-determined threshold ratio, the employer is designated hazardous. *Id*. § 164.1(c).

Once the Division designates an employer as hazardous, it notifies the employer and its workers' compensation insurance carrier. Tex. Lab. Code Ann. § 411.042 (West Supp. 2004-05); 28 Tex. Admin. Code § 164.2(a) (2004). The notice must inform the employer (1) of the facts giving rise to the designation, (2) of any actions that must be taken as a result of the designation, (3) that an administrative review by the Division may be requested, and (4) that any information or documents provided by the employer are subject to disclosure under the Open Records Act. 28 Tex. Admin. Code § 164.2(b). An employer may also request a full hearing before an administrative law judge to contest a hazardous designation. *Id*. § 164.2(b)(5).

In 1996, we held that the Program, as it was then administered, was preempted because it regulated workplace safety issues already addressed by the OSH Act. *Ben Robinson Co.*

2

*v. Texas Workers' Comp. Comm'n*, 934 S.W.2d 149, 158 (Tex. App.—Austin 1996, writ denied). In response, the legislature amended the program by deleting all portions that contained occupational and health standards for which a federal standard was in effect. *See* House Comm. on Bus. & Indus., Tex. H.B. 2514, 76th Leg., R.S. (1999). Because the OSH Act applies only to private employers, the amendments and new rules established different guidelines for private employers while the Program remained essentially the same for public employers. Under the amended Program, private employers were still identified as hazardous but were no longer required to develop accident prevention plans. The Commission's intent was to comply with both *Ben Robinson* and the legislative directive to develop a system of identifying hazardous employers. *See* Tex. Lab. Code Ann. § 411.041 (West Supp. 2004-05); *see also* 23 Tex. Reg. 11812 (1998) (to be codified as amendment to 28 Tex. Admin. Code §§ 164.1-.18) (proposed August 21, 1998).

**Skilled Craftsmen**

Skilled Craftsmen is an agency that supplies temporary help to the manufacturing and industrial trades, such as electronics, welding, assembly, and machinists. Persons placed by Skilled Craftsmen remain its employees while they are working at a client company's work site. Thus, these employees are covered under Skilled Craftsmen's workers' compensation insurance. Between April 1, 2000, and March 31, 2001, the applicable audit period designated by the Commission for identifying hazardous employers, three of Skilled Craftsmen's employees suffered injuries that resulted in more than seven days of lost time.[1] As a result of these three injuries, Skilled Craftsmen was identified as a hazardous employer.

---

[1] An employer's total number of injuries includes: lost time injuries, occupational diseases, and fatalities. 28 Tex. Admin. Code § 164.1(b)(5) (West 2004).

Skilled Craftsmen appealed the designation to the State Office of Administrative Hearings.[2] Before its administrative hearing, Skilled Craftsmen filed suit in district court seeking a declaration that identifying and labeling private employers as hazardous under the current Program is preempted by the OSH Act. Alternatively, Skilled Craftsmen argued that the formula used to identify hazardous employers is invalid as applied to a temporary help agency. Specifically, Skilled Craftsmen claimed that the results of the formula are arbitrary and unreasonable (1) because it fails to address the differences between employers with static and dynamic workforces, (2) because the Standard Industrial Classification code (SIC code) assigned to Skilled Craftsmen is too broad, and (3) because none of the client companies for whom the employees were working when they were injured was designated hazardous.

In order to better understand Skilled Craftsmen's as-applied challenge, a brief explanation of the formula used to identify hazardous employers is helpful. As we stated above, the formula compares an employer's normalized injury rate with the expected injury rate for that type of employment; if the ratio of normalized to expected injuries exceeds a pre-determined threshold ratio, the employer is designated hazardous. An employer's injury rate is determined by dividing the total number of injuries by the highest employment during any one pay period and then multiplying that figure by one hundred. An employer's expected injury rate is determined by the Bureau of Labor Statistics based on the SIC code assigned to the employer by the Texas Workforce Commission. Skilled Craftsmen was assigned SIC code 7363, entitled *Help Supply Services*, which

_____

[2] The administrative hearing has been abated pending the outcome of Skilled Craftsmen's declaratory action.

includes all establishments primarily engaged in supplying temporary or continuing help on a contract or fee basis. Other types of businesses included in SIC code 7363 are employee leasing services, fashion show model supply services, other modeling services, manpower pools, office help supply services, and usher services.

Skilled Craftsmen argued to the district court that the formula is based on assumptions that do not apply to a temporary help agency. For example, Skilled Craftsmen claimed that the formula fails to take into account its dynamic work force. During the twelve-month period used by the Commission to identify hazardous employers, Skilled Craftsmen employed a total of 414 people. However, the most people it employed in any one pay period was 89. Skilled Craftsmen contends that the formula should take into account the total number of employees that were exposed to possible injury rather than those employed during a single pay period. Skilled Craftsmen avers that the formula functions adequately for most employers because the number of employees remains relatively constant between pay periods. However, a temporary help agency's workforce is highly variable. If the Division had used all 414 employees instead of 89, the formula would not have identified Skilled Craftsmen as hazardous.

Skilled Craftsmen further argued that the SIC code and its corresponding expected injury rate inadequately describe what it does as an employer. The SIC code assumes that Skilled Craftsmen only places employees in clerical or office positions, when in fact its employees are placed in industrial labor positions for client companies that are assigned SIC codes with significantly higher expected injury rates. In this case, two of the three injured employees were

working as general shop helpers, while the third was working as a pipe cutter. The three employees were working at two separate job sites. The SIC codes for these work sites were 3498, for *Fabricated Pipe and Pipe Fittings*, and 3533, for *Oil and Gas Field Machinery and Equipment*. The expected injury rate for SIC code 3498 was 5 injuries per 100 employees at the time Skilled Craftsmen was designated hazardous. The expected injury rate for SIC code 3533 was 1.4 injuries per 100 employees. The expected injury rate for Skilled Craftmen's SIC code 7363, is 1 injury per 100 employees. Had the Division used the expected injury rates for the work sites where the Skilled Craftsmen's employees were injured, the formula would not have identified Skilled Craftsmen as a hazardous employer.

The Commission contended that the Program, as it pertains to private employers, is not preempted because (1) there is no federal standard for identifying hazardous employers, and (2) the Program does not actually regulate occupational health and safety issues since it does not require an identified private employer to take any action to alleviate the source of the hazard. The district court held that the Program is not preempted by federal law and is being administered pursuant to valid rules. This appeal followed.

### Standard of Review

In this case, we must determine whether the Commission's Program is preempted by federal law. Because this determination is a pure question of law, we review the trial court's decision *de novo*. *See State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996) (stating that questions of law are reviewed without deference to lower court's conclusion).

## DISCUSSION

Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, which provides that "the Law of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, and any Thing in the Constitution or Laws of and State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, if a state law conflicts with federal law, the state law is preempted and "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). Preemption can take one of several forms. A federal law may preempt a state law expressly. *Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001). It may also preempt a state law impliedly, either (1) when the scheme of federal regulation is sufficiently comprehensive to support a reasonable inference that Congress left no room for supplementary state regulation or (2) if the state law actually conflicts with federal regulations. *Id*. A state law presents an actual conflict when a party cannot comply with both state and federal regulations or when the state law would obstruct Congress' purposes and objectives. *Id*.

"The purpose of Congress is the ultimate touchstone" in every preemption case. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963). Congressional intent is discerned primarily from the statute's language and structure. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996). Also relevant is the purpose of the statute as a whole, which is revealed through "the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id*.

The OSH Act authorizes the U.S. Secretary of Labor to promulgate federal occupational safety and health standards. 29 U.S.C. § 655 (West 1999). In the Act, Congress

7

endeavored "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." *Id*. § 651(b) (West 1999). By applying these standards to all businesses affecting interstate commerce, Congress brought the federal government into a field that traditionally had been occupied by the states. However, federal regulation of the workplace was not intended to be all encompassing. Congress expressly stated that the Act does not "prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no federal standard is in effect." *Id*. § 667(a) (West 1999). In addition to reserving certain areas to state regulation, Congress also gave the states the option of displacing federal regulation by submitting for approval a state plan developing and enforcing its own occupational safety and health standards. *Id*. § 667(b).[3]

The Supreme Court has stated, "the Act as a whole evidences Congress' intent to avoid subjecting workers and employers to duplicative regulation; a State may develop an occupational safety and health program tailored to its own needs, but only if it is willing to completely displace the applicable federal regulations." *Gade v. National Solid Wastes Mgmt.*, 505 U.S. 88, 100 (1992). In *Gade*, the Supreme Court held that non-approved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly preempted as in conflict with the full purposes and objectives of the Act, even if it merely supplements the federal standard. *Id*. at 98-100. The Court further asserted, "A state law that expressly declares a

---

[3] Section 667(b) of the Act states that "Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated shall submit a State plan for the development of such standards and their enforcement." 29 U.S.C. § 667(b) (West 1999).

8

legislative purpose of regulating occupational health and safety would, in the absence of an approved state plan, be preempted by an OSH Act standard regulating the same subject matter." *Id*. at 105.[4] Essentially, the Court held that if a state wishes to regulate an issue of worker safety for which a federal standard is in effect, its only option is to obtain the prior approval of the Secretary of Labor, as described in section 667 of the Act. *Id*. at 103-04.

Despite *Gade*, the Commission argues that the OSH Act does not preempt the Texas Program for two reasons. First, there is no federal standard for identifying hazardous employers. Second, the Program does not actually regulate occupational safety and health issues because identified private employers are not required to take any action to alleviate the source of the hazard. Therefore, the Commission contends that federal approval is unnecessary because it has complied with section 667 of OSH Act. Because we hold that the practical effect of the Program is the regulation of occupational safety and health issues for which federal standards do exist, we reject the Commission's position.

In the letter notifying Skilled Craftsmen that it had been designated a hazardous employer, Robert Giacomazza—the Chief of Inspections, Consultations, and Reviews—stated that the explicit goal of the Program is to provide a safer and more healthful workplace for the workers of Texas. Likewise, the Commission claims that the Program's express purpose is to reduce injuries by promoting workplace safety. The Commission avers that the identification of hazardous employers increases awareness of occupational health and safety issues and consequently it could

---

[4] When assessing the purpose of a challenged statute, we look beyond the name, description, or characterization given it and also consider the practical impact of the law. *Gade v. National Solid Wastes Mgmt.*, 505 U.S. 88, 105-06 (1992).

reduce the number of workplace injuries. We find it doubtful that the knowledge that one employer has been identified as hazardous would, by itself, spur another employer to address occupational health and safety issues. Instead, it is more likely that the potential threat of being labeled hazardous compels employers to tailor their operations to avoid being identified by the Commission.

The Commission's contention is that for preemption purposes, it is irrelevant why an employer changes its behavior as long as it was not *required* to do so. This belief is grounded in the notion that a hazardous employer designation has no actual effect other than notifying an employer that its workplace injury rate exceeds the rate reasonably expected for that employer's business or industry. A letter would merely inform the employer of the problem. However, the Commission also notifies the employer's workers' compensation insurance carrier and makes the identities of designated employers available to the public. As we noted in *Ben Robinson,* a hazardous designation can have a detrimental impact on a company's business affairs. *Ben Robinson*, 934 S.W.2d at 152 (asserting that designation may provide current and future customers reason to do business elsewhere and may also diminish overall value of company). Jerry Templeton, President of Skilled Craftsmen, testified at trial that a hazardous designation would severely impair his ability to attract the type of employees necessary to continue to operate his business and that, due to the competitiveness of the market, his competitors would surely use the designation as way to market their services.

It appears clear that the disparaging label, "hazardous employer," is designed to make an example out of an employer in order to coerce a change in the conduct of both the labeled employer and other employers who wish to avoid such a stigma. We find it telling that the hazardous designation remains effective for a year, regardless of any curative action taken by the

10

employer.[5]  In the preamble to the amended rules, the Commission explains that a year "allows sufficient time for an identified employer to take action before the next audit period." 23 Tex. Reg. 11812 (1998) (to be codified as amendment to 28 Tex. Admin. Code §§ 164.1-.18) (proposed August 21, 1998).  This explanation evidences the Commission's intent to effect a change in the behavior of an identified employer.  Furthermore, the fact that the designation remains effective for a year, even if the identified employer has sufficiently alleviated the hazard, is evidence that the label is punitive and designed to deter similar behavior of non-identified employers.

The Commission uses the hazardous employer designation as a stick to compel private employers to change their behavior even if the employer is fully complying with relevant OSH Act standards.  Accordingly, it is possible for an employer to be designated hazardous by the Commission without ever violating the OSH Act.  The formula used by the Commission to identify a hazardous employer is not tied to the violation of any particular OSH Act standard.  The formula only states that an employer's injury rate exceeds industry expectations; it does not inquire into the causes of the injuries.  However, since removal of a hazardous designation requires an employer to take action to reduce the number of injuries, the Commission is implicitly regulating the causes of the injuries.  Because OSH Act standards cover such a wide spectrum of occupational health and safety issues, it is difficult to envision how an identified employer could take action to reduce workplace injuries without addressing an area for which a federal standard exists.[6]  While an action

_____

[5]  However, a hazardous designation may be removed if it is found by administrative review that the employer was erroneously identified.  28 Tex. Admin. Code § 164.16 (West 2004).

[6]  The OSH Act has standards that address: walking and working surfaces; exit routes, emergency action plans, and fire prevention plans; powered platforms, manlifts, and vehicle-mounted work platforms; occupational health and environmental controls; hazardous materials;

11

taken in response to a hazardous designation by the Commission might not contravene any OSH Act standard, the Program is not saved from preemption because it supplements rather than contradicts OSH Act standards. *Gade*, 505 U.S. at 100. The Supreme Court has held that Congress intended to avoid subjecting workers and employers to duplicative regulation. *Id*.

Although the Commission contends that the Program merely identifies hazardous private employers, its purpose and intent is to implicitly regulate occupational health and safety issues. The Program intimidates and coerces private employers to take action to correct occupational health and safety issues in order to reduce workplace injuries. As a result, private employers are placed in the unsettling position of having to comply with the OSH Act while also providing a workplace in which the number of injuries will be less than industry expectations within the state. This is exactly the type of duplicative regulation that Congress sought to avoid when it enacted the OSH Act. Because the Program effectively obligates private employers, under penalty of being publicly labeled as hazardous, to take action to reduce workplace injuries, it essentially regulates occupational safety and health issues addressed by federal law. Therefore, the Program identifying hazardous private employers is preempted by the OSH Act. Because we hold that the Program is preempted by federal law, we do not address Skilled Craftsmen's alternative argument that the rule used to determine whether an employer will be designated hazardous is arbitrary and capricious as applied to this employer.

---

personal protective equipment; general environmental controls; medical and first aid; fire protection; compressed gas and compressed air equipment; materials handling and storage; machinery and machine guarding; hand and portable powered tools and other hand-held equipment; welding, cutting, and brazing; special industries; electrical issues; commercial diving operations; and toxic and hazardous substances. *See* 29 C.F.R. § 1910, subparts (D)-(T), (Z) (2004).

**CONCLUSION**

Although the Program likely supplements rather than contradicts existing federal standards, it is preempted because it implicitly regulates workplace safety issues, thereby subjecting employers to duplicative regulation. Accordingly, we reverse the ruling of the district court and render judgment that the Program is preempted by the OSH Act.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Reversed and Rendered

Filed: February 3, 2005

13