**TOWNSHIP OF TINICUM, Delaware County, Pennsylvania, Petitioner**

v.

**UNITED STATES of America DEPARTMENT OF TRANSPORTATION, Office of the Secretary, Washington, D.C. Air Transport Association of America, Inc.; Airports Council International–North America, Intervenors.**

**(Pursuant to Clerk Order dated 4/28/08).**

No. 08–1830.

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 2009.

Filed: Sept. 14, 2009.

Francis G.X. Pileggi (argued), Sheldon K. Rennie, Sophia Siddiqui, Fox Rothschild, Wilmington, DE, for Petitioner.

Dale C. Andrews, Paul M. Geier, Mary F. Withum (argued), U.S. Department of Transportation, Office of General Counsel, Robert B. Nicholson, Robert J. Wiggers, U.S. Department of Justice, Appellate Section, Washington, DC, for Respondent.

M. Roy Goldberg (argued), Sheppard, Mullin, Richter & Hampton, Washington, DC, Vincent A. LaMonaca, J. Denny Shupe, Schnader Harrison Segal & Lewis, Philadelphia, PA, for Intervenor Air Transport Association of America, Inc.

Scott P. Lewis, Douglas H. Wilkins, Anderson & Kreiger, Cambridge, MA, for Intervenor Airports Council International–North America.

Before: CHAGARES and HARDIMAN, Circuit Judges, and GARBIS *, District Judge.

* Honorable Marvin J. Garbis, Senior United States District Judge for the District of Maryland, sitting by designation.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

This case requires us to determine whether a municipality may, consistent with the Anti–Head Tax Act ("AHTA"), 49 U.S.C. § 40116, require airlines to pay a tax every time one of their flights lands within the municipality's borders. Tinicum Township ("Tinicum") enacted an ordinance establishing just such a tax. Airline industry groups complained to the Department of Transportation ("DOT"), arguing that the tax violated the AHTA. The DOT agreed with the industry groups and issued a declaratory order invalidating the ordinance. Tinicum filed a petition for review, and we will deny that petition.

## I.

The City of Philadelphia ("City") owns and operates the Philadelphia International Airport ("Airport"). Some of the Airport's runways, however, are located within Tinicum's borders. About fifty years ago, a dispute arose over whether Tinicum could charge the City property tax for the Airport's use of that land. Rather than litigate the matter to completion, Tinicum and the City settled. The City agreed to make periodic payments to Tinicum in exchange for continued runway access. But that agreement expired—and the payments, which amounted to as much as $1.1 million per year, stopped—in May 2007. Unable to reach a new agreement with the City, on June 18, 2007 Tinicum enacted Ordinance 2007–809, which provides:

> [T]here shall be imposed upon all aircraft users a privilege fee ... for use of property located within Tinicum Township for landing of aircraft [of] $.03 per one thousand (1,000) pounds of part thereof of approved maximum landed weight. Fees will be determined by weight listed in the Federal Aviation

Administration [("FAA")] type certificate data sheet.

Appendix (App.) 26–27.

The ordinance became effective on July 18, 2007. App. 28. Over the course of the next month, passenger airlines (including United, Southwest, and Delta) and parcel shippers (including Federal Express and United Parcel Service) landed flights at the Airport on runways located within Tinicum, but refused to pay the tax. The Air Transport Association ("ATA") and the Air Carrier Association of America ("ACAA"), industry groups whose membership includes many of those carriers, petitioned the DOT to review the ordinance and invalidate it on the ground that it violated the AHTA. After receiving written submissions from ATA, ACAA, Tinicum, and other interested parties, the DOT issued an order agreeing with the industry groups and declaring the ordinance invalid. Tinicum then filed a petition for review of the DOT's administrative order. ATA and the Airports Council International–North America ("ACI–NA"), a coalition of local governments that own and operate airports, entered the case as intervenors, urging the denial of Tinicum's petition for review.

## II.

The DOT had subject matter jurisdiction over the ATA and the ACAA's petition for a declaratory order pursuant to 49 U.S.C. § 40113(a). This Court has subject matter jurisdiction to review the DOT's declaratory order pursuant to § 46110(a) and (c).

The DOT is charged with administering the AHTA. *See Nw. Airlines, Inc. v. County of Kent, Mich.*, 510 U.S. 355, 366–67, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994) ("The Secretary of Transportation is charged with administering the federal aviation laws, including the AHTA."). We

therefore review the DOT's interpretation of that statute using the framework established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984):

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear ... the court ... must give effect to th[at] unambiguously expressed intent.... [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778.

### III.

In 1970, Congress enacted federal head taxes—uniform, per-person tolls—on airplane passengers in order to raise money to help states and municipalities develop local airports. *See Aloha Airlines, Inc. v. Dir. of Taxation*, 464 U.S. 7, 8–9, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983) (discussing federal efforts to assist local airports). In 1972, the Supreme Court in *Evansville–Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, held that states, too, may enact head taxes on interstate air travel. 405 U.S. 707, 716–17, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). The Court explained:

> At least so long as the toll is based on some fair approximation of use or privilege for use [of a state facility], ... and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster, even though some other formula might reflect more exactly the relative use of the state facilities by individual users.

*Id.*

Congress became concerned that the Court's decision opened the floodgates for a hodgepodge of local head taxes and similar taxes that could complicate interstate air travel. *See County of Kent*, 510 U.S. at 363 [114 S.Ct. 855] (discussing Congress's perception of *Evansville–Vanderburgh*). So, in 1973, Congress enacted the AHTA, 49 U.S.C. § 1513, which prohibited a wide array of state head taxes and other functionally similar tolls. *See id.* Congress has since amended the statute several times, and it is now codified at § 40116.

Immediately prior to recodification at § 40116, the AHTA provided:

> (a) Prohibition; exemption. No state (or political subdivision thereof ... ) shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom....

> (b) Permissible States taxes and fees. Except as provided in subsection (d) of this section [prohibiting certain tolls deemed to unreasonably burden interstate commerce], nothing in this section shall prohibit a State (or political subdivision thereof ... ) from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and nothing in this section shall prohibit a State (or political subdivision thereof ... ) owning or operating an airport from levying or collecting reasonable rental charges, landing fees, and other service charges from aircraft operators from the use of airport facilities.

> ....

> (f) Flight takeoff or landing requirement for State taxation. No State ... or political subdivision thereof shall levy

or collect any tax on or with respect to any flight of a commercial aircraft or any activity or service on board such aircraft unless such aircraft takes off or lands in such State or political subdivision as part of such flight.

49 U.S.C. § 1513 (1994).

Congress recodified the AHTA and relocated it to § 40116 via Public Law 103–272. Section 1 of that law set forth the new text:

(b) Prohibitions. Except as provided in subsection (c) of this section and section 40117 of this title, a State [or] political subdivision of a State ... may not levy or collect a tax, fee, head charge, or other charge on—(1) an individual traveling in air commerce; (2) the transportation of an individual traveling in air commerce; (3) the sale of air transportation; or (4) the gross receipts from that air commerce or transportation.

(c) Aircraft taking off or landing in State. A State or political subdivision of a State may levy or collect a tax on or related to a flight of a commercial aircraft or an activity or service on the aircraft only if the aircraft takes off or lands in the State or political subdivision as part of the flight.

(d) Unreasonable burdens and discrimination against interstate commerce.

. . . .

(2)(A) A State, political subdivision of a State, or authority acting for a State or political subdivision may not do any of the following acts because those acts unreasonably burden and discriminate against interstate commerce: ...

(e) Other allowable taxes and charges. Except as provided in subsection (d) of this section, a State or political subdivision of a State may levy or collect—(1) taxes (except those enumerated in subsection (b) of this section), including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and (2) reasonable rental charges, landing fees, and other service charges from aircraft operators for using airport facilities of an airport owned or operated by that State or subdivision.

Pub.L. No. 103–272, § 1(e), 108 Stat. 745, 1111–12 (1994) (codified at § 40116). Later in the recodification law, Congress provided: "Sections 1–4 of this Act restate, without substantive change, laws enacted before July 1, 1993, that were replaced by those sections. Those sections may not be construed as making a substantive change in the laws replaced." § 6(a), 108 Stat. at 1378.

In 1996, Congress proposed an amendment to the AHTA that would have removed subsection (b)'s reference to subsection (c) as an "[e]xcept[ion]" to the ban on the four enumerated categories of taxes. H.R.Rep. No. 104–714(I), at 11, *reprinted in* 1996 U.S.C.C.A.N. 3658, 3658 (proposing amendment to H.R. 3539, 104th Cong. (1996)). The House and Senate reports accompanying this proposed amendment called the reference a "mistake." H.R.Rep. No. 104–714(I), at 48–49, *reprinted in* 1996 U.S.C.C.A.N. 3658, 3685–86; S.Rep. No. 104–333, at 28 (1996). This amendment was never enacted.

IV.

Determining whether a tax passes AHTA muster begins with § 40116(b). That provision bans four categories of local taxes: taxes on "(1) an individual traveling in air commerce; (2) the transportation of an individual traveling in air commerce; (3) the sale of air transportation; [and] (4) the gross receipts from that air commerce or transportation." The ban, however, operates "[e]xcept as provided in subsection (c)," which states that a municipality "may levy or collect a tax on or related to a flight of a commercial aircraft or an activi-

ty or service on the aircraft only if the aircraft takes off or lands in the [taxing locale]." 49 U.S.C. § 40116(b), (c).

Suppose a municipality enacts a tax that falls within one of the four categories enumerated in subsection (b). Suppose the tax relates to a commercial flight.[1] And suppose that flight arrives in or departs from the taxing municipality.[2] Does subsection (c) save the tax from the categorical ban? That is the question presented by Tinicum's petition for review, and we answer it in the negative.[3]

### A.

The DOT held that the tax imposed by Tinicum's ordinance violates the AHTA.[4] It held that the tax falls within subsection (b)'s categorical ban,[5] and that subsection (c) does not save it.

The DOT had before it two competing interpretations of subsection (c). The industry groups read it to provide that a tax on a subject flight that lacks a ground nexus to the taxing jurisdiction cannot pass AHTA muster, regardless of whether the tax falls within the categorical ban. According to the industry groups, subsection (c) says nothing about the fate of a tax on a subject flight that *does have* such a nexus. Tinicum read subsection (c) as a savings clause providing that a tax on a

subject flight that has such a ground nexus always escapes condemnation at the hands of the categorical ban (though the tax still, of course, must navigate the AHTA's other prohibitions). The DOT held that the industry groups' interpretation is the correct one.

The DOT based its decision primarily on the recodification law. That law declares that § 40116 reenacted § 1513 "without substantive change," and Tinicum concedes that § 1513(f)— § 40116(c)'s predecessor—would not have saved the tax. Surely, the DOT reasoned, Congress could not have intended that language to accompany a radical revision of § 1513(f), which is precisely what reading subsection (c) as a savings clause would accomplish. The DOT also held that reading subsection (c) as a savings clause would too easily allow a municipality to circumvent the categorical ban: a municipality could enact a tax belonging to any of the banned categories so long as it drafted the tax to include a subject flight having a ground nexus to the taxing jurisdiction—a feature that arises naturally in local taxes (like those covered by the ban) on air travel.

The DOT determined, however, that subsection (c), even when not construed as a savings clause, did not perfectly mesh with the rest of the AHTA. In particular, it

1. For ease of reference, throughout this opinion we shall call a commercial flight to which a tax relates, the tax's "subject flight" (because that flight is the subject of the tax).

2. For ease of reference, throughout this opinion we shall say that a flight that arrives in or departs from the taxing municipality has a "ground nexus" with the taxing municipality (because that flight makes contact with—and does not simply fly over—the taxing municipality).

3. The petition also presents questions implicating other subsections of the AHTA, other federal statutes, and international agreements. Because we resolve the case on sub-

section (c) grounds, we do not answer those questions.

4. For its subsection (c) analysis, the DOT appears to have assumed (without deciding) that Tinicum's ordinance does indeed impose a "tax"—and not a "fee" or "charge"—within the meaning of the AHTA. We do the same.

5. Tinicum conceded as much when it admitted that only a savings clause could rescue the tax from condemnation. *See* App. 141 (arguing that the tax is "permissible *because the [AHTA] provides a specific exception for [it,]*" not because it avoids the ban in the first place (citing, *inter alia*, 49 U.S.C. § 40116(c)) (emphasis added)) (Tinicum submission to DOT).

posited that even when not construed as a savings clause, subsection (c) would conflict with subsection (b)'s opening clause indicating that subsection (c) is an "[e]xcept[ion]" to the categorical ban. The DOT solved this problem by holding that in light of the recodification law's clear command, the AHTA should be read as if that offending clause of subsection (b) were deleted.

Tinicum filed a petition for review of the DOT's order, essentially reprising the arguments it made during the administrative proceedings. First, Tinicum argues that the text of subsection (c) and subsection (b)'s opening clause indicate that subsection (c) saves from the categorical ban any tax on a subject flight that has a ground nexus to the taxing locale. Second, Tinicum asserts that consulting § 1513(f) to shed light on the meaning of § 40116(c) is inappropriate, notwithstanding the recodification law, because Congress could have reenacted the statute's original language verbatim, but did not. And third, Tinicum contends that examining the legislative history of the rejected amendment to remove subsection (b)'s opening clause is not an appropriate way to determine the meaning of the AHTA that Congress actually enacted.

### B.

■ We begin our analysis by determining "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear ... [we] ... must give effect to th[at] unambiguously expressed intent." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. Tinicum contends that the AHTA's text dictates that subsection (c) functions as a savings clause, and makes two arguments in support of its contention.

### 1.

Tinicum first urges us to focus on the text of subsection (c) itself. That provision states that a municipality "may" tax a commercial flight only if the flight has a ground nexus to the municipality. Tinicum argues that the word "may" indicates a grant of permission to do whatever act the text immediately following that word describes. Therefore, Tinicum concludes, subsection (c) grants a municipality the authority to tax a flight with a ground nexus to the municipality, notwithstanding subsection (b)'s categorical ban.

We disagree with Tinicum's argument. The statutory text following "may" is "levy ... a tax ... related to a flight of a commercial aircraft ... *only if* the aircraft takes off or lands in the [taxing locale]." § 40116(c) (emphasis added). It is *not* "levy ... a tax ... related to a flight of a commercial aircraft ... if the aircraft takes off or lands in the [taxing locale]." This distinction makes a difference. *See Carver v. Lehman,* 558 F.3d 869, 876 n. 12 (9th Cir.2009) (explaining that "[t]he distinction between 'if' and 'only if,' [ ] is not a mere quibble over vocabulary").

■ The phrase "only if" describes a necessary condition, not a sufficient condition. *See California v. Hodari D.,* 499 U.S. 621, 627–28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (explaining that "only if" describes "a *necessary,* but not a *sufficient,* condition") (emphasis in original). A necessary condition describes a prerequisite. *See id.; Alden Mgmt. Servs. v. Chao,* 532 F.3d 578, 581 (7th Cir.2008). For example, making the playoffs is a necessary condition for winning the Major League Baseball World Series because a team cannot win the World Series if it does not make the playoffs. Using the "only if" form: a team may win the World Series *only if* it makes the playoffs. But, a team's meeting the necessary condition of making the playoffs does not guarantee that the team will win the World Series.

■ The word "if" describes a sufficient condition. *See Alden Mgmt.*, 532 F.3d at 581; *cf. Hodari D.*, 499 U.S. at 628, 111 S.Ct. 1547. A sufficient condition is a guarantee. *See Alden Mgmt.*, 532 F.3d at 581. For example, winning the division is a sufficient condition for making the playoffs because a team that wins the division is ensured a spot in the playoffs. Using the "if" form: a team makes the playoffs *if* it wins its division.

Subsection (c), by invoking "only if," describes a necessary condition. It provides that a tax on a subject flight that lacks a ground nexus to the taxing jurisdiction cannot pass AHTA muster (regardless of whether the tax falls within the categorical ban), but it says nothing about the fate of a tax on a subject flight that *does have* such a nexus.

Tinicum's cases emphasizing the permissive nature of the word "may" simply are inapposite. They discuss statutes that do not contain the "only if" connective or similar restrictive language. *See In re New Haven Projects Ltd. Liab. Co.*, 225 F.3d 283, 286–87 (2d Cir.2000) (interpreting 11 U.S.C. § 505(a)(1), which provides that, subject to certain limitations, "the court may determine the amount or legality of any tax"); *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1005 (2d Cir.1993) (interpreting 47 U.S.C. § 553(c)(2), which provides that "the court may" grant injunctive relief, attorney fees, and damages against someone who has unlawfully intercepted a cable communications service).

We thus reject Tinicum's argument that the plain text of subsection (c) indicates that it functions as a savings clause.

**2.**

Tinicum's second textual argument is more appealing than its first, but ultimately we reject this one, as well. Tinicum argues that subsection (b)'s opening clause, by characterizing subsection (c) as an "[e]xcept[ion]" to the categorical ban, implies that subsection (c) must save the taxes it describes (namely, those with subject flights having a ground nexus to the taxing locale). The DOT concedes this. The DOT argues, however, that the restrictive text of subsection (c) and the recodification law's statement that Congress in § 40116 reenacted the AHTA "without substantive change" justify reading the statute as if subsection (b)'s opening clause were deleted.

We disagree with Tinicum's argument (and believe that the DOT did not have to make that concession). True, subsection (c) is an "[e]xcept[ion]" to subsection (b)'s prohibitory regime. That does not mean, however, that subsection (c) is a savings clause. Subsection (b)'s "[e]xcept as provided in subsection (c)" language makes sense when subsection (c) is construed as a necessary condition.

Suppose subsection (c) did not exist. Subsection (b), then, would be equivalent to the categorical ban standing alone; it would prohibit only taxes falling within an enumerated category. In essence, subsection (b) would provide: a tax falling within an enumerated category is prohibited, and a tax not falling within an enumerated category is not necessarily prohibited.[6] Now, consider subsection (b) as Congress *actually* drafted it—*with* its reference to subsection (c). It provides: a tax falling within an enumerated category is prohibit-

---

**6.** The reason subsection (b) would provide that a tax not falling within an enumerated category is "not necessarily prohibited"—as opposed to "not prohibited"—is that while subsection (b) would not *itself* prohibit such a tax, another AHTA provision, such as subsection (d), *could* prohibit it. Therefore, the most one could glean from reading subsection (b) would be that such a tax is "not necessarily prohibited."

ed, and a tax not falling within an enumerated category is not necessarily prohibited, *except* that a tax on a subject flight lacking a ground nexus *is* prohibited even if such tax does not belong to an enumerated category. The "[e]xcept as provided by subsection (c)" language meaningfully alters subsection (b)'s prohibitory regime.

Subsection (c), then, read as a necessary condition, provides an exception to the operation of subsection (b)'s prohibitory regime. We thus reject Tinicum's argument that subsection (b)'s plain language requires reading subsection (c) as a savings clause.[7]

\*     \*     \*     \*     \*     \*

We hold that the AHTA's text unambiguously demonstrates that subsection (c) is not a savings clause for flight-related taxes. Under the applicable *Chevron* framework, we need not go further.[8]

## V.

For the above reasons, we will deny Tinicum's petition for review of the DOT's order declaring Tinicum's tax invalid.

7. Our reading has the virtue of preserving each word of the statute's text, which we must do whenever possible. *See, e.g., United States v. Atl. Research Corp.*, 551 U.S. 128, 136–37, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007) (rejecting interpretation that would render statutory provision a "dead letter").

8. We therefore need not address Tinicum's preemptive counterarguments for why we should not rely on the legislative history of a rejected amendment to the AHTA or on the language of the recodification law. We do note, however, that our reading of subsection (c) is consistent with the recodification law's statement that § 40116 does not differ in substance from § 1513.