

# SUPREME COURT OF MISSOURI
## en banc

BALLOONS OVER THE )
RAINBOW, INC. )
)
           Appellant, )
v. )   No. SC93039
)
DIRECTOR OF REVENUE, )
)
           Respondent. )

PETITION FOR REVIEW OF A DECISION OF THE
ADMINISTRATIVE HEARING COMMISSION
The Honorable Karen A. Winn, Commissioner

*Opinion issued April 15, 2014*

Balloons Over the Rainbow, Inc., a Missouri corporation, seeks review of the

administrative hearing commission's (AHC) denial of its claim for a refund of sales taxes

paid and its challenge to the assessment of sales and use taxes. In its petition for review,

Balloons claims that the AHC erred in concluding that it owed sales taxes under section

144.020.1(2),[1] on gross receipts of hot air balloon rides because such taxes are prohibited

by the federal Anti-Head Tax Act (AHTA), 49 U.S.C. § 40116. Balloons also claims that

sales taxes assessed on the sale of balloon rides through flight certificates sold by out-of-

state third party vendors are not taxable because they are not "sales at retail" in Missouri,

as defined in section 144.010(11), and qualify for the resale exemption in section

144.210.1. Balloons further claims that the AHC erred in concluding that it owed use

---

[1] Unless otherwise specified, all statutory references are to RSMo Supp. 2011.

taxes under section 144.030.2 on its out-of-state purchase of a hot air balloon and inflator fan from Texas because Balloons is a "common carrier" under section 144.032.2 and exempt from paying such taxes.

This Court reverses the ruling of the AHC as to the assessment of sales taxes on all sales of hot air balloon rides—those purchased directly from Balloons in Missouri and those purchased by flight certificate from the out-of-state third-party vendors—because the taxes on those gross receipts are state taxes on "air commerce," which are prohibited by the AHTA. This Court rejects, however, Balloons' claim that it does not owe use taxes on the hot air balloon and inflator fan purchased in Texas because Balloons is not a common carrier for purposes of use tax exemptions under section 144.030.2.(3). Accordingly, the decision of the AHC is affirmed in part and reversed in part, and the case is remanded.

## Factual and Procedural Background

Balloons Over the Rainbow, Inc., is a Missouri corporation that sells rides on untethered hot air balloons in the St. Louis area. At the time of their scheduled balloon rides, Balloons' customers meet at the Jefferson County Library in High Ridge, Missouri. From there, they are transported to a launch point that varies depending on prevailing wind directions.

Each flight lasts about an hour and is piloted by a commercial pilot licensed by the Federal Aviation Administration. The pilot typically tries to confine the balloon flights to Missouri. However, the flight path ultimately is dictated by prevailing wind patterns, which cause flights occasionally to enter into Illinois' airspace. According to Balloons,

this happens less than 10 percent of the time. Balloons' pilots also attempt to steer clear of airports, but if wind patterns do carry flights over airports, pilots fly at an altitude of more than 10,000 feet[2] to avoid the airports' airspace, which extends from 0 to 10,000 feet. At the end of each flight, pilots attempt to land the balloons in Missouri as close to the launch site as possible. Regardless of the landing location, all passengers are shuttled back to the Jefferson County Library upon landing.

To ride with Balloons, customers either must purchase rides in Missouri directly from Balloons or buy a flight certificate on the internet through out-of-state third-party vendors with a contractual relationship with Balloons. All customers buying directly from Balloons pay the same rate, while customers purchasing flight certificates from an out-of-state third-party vendor pay a price set by the vendor. When a customer presents a flight certificate to Balloons, the customer receives a balloon ride if Balloons decides to fly that customer. Subsequently, the third-party vendor pays Balloons a flat fee for the redeemed flight certificate based on its contract with Balloons. No payment is exchanged between Balloons and the third-party vendor prior to the customers presenting Balloons with the flight certificate, and Balloons never collected or remitted sales taxes on the payment it received for those flights. Balloons did collect sales tax, however, on receipts of balloon rides purchased in Missouri by customers directly from Balloons from October 2007 through March 2010.

In January 2011, Balloons requested a refund of those sales taxes in the amount of $7,761.51 from the director of revenue. It claimed that it was entitled to a refund of those

---

[2] Regular flying altitude is anywhere between 1,500 and 3,000 feet.

taxes because the federal AHTA prohibits Missouri from assessing sales taxes on the sale of hot air balloon rides; therefore, section 144.020—the Missouri statute under which Balloons paid the Missouri sales tax—is preempted by the AHTA. The director denied Balloons' refund request.

Prior to Balloons' January 2011 refund request, the department of revenue audited Balloons for sales and withholding taxes for the period of January 1 2007, through December 31, 2009, and for use taxes during the period of January 1, 2005, through December 31, 2009. After the audit, the director of revenue assessed Balloons for unpaid sales taxes of $2,729.76, plus additions and interest, and use taxes of $1,184.44. The sales taxes were for the gross receipts from rides sold through the internet by out-of-state third-party vendors. The use taxes were assessed on, among other items, a $1,000 inflator fan purchased in Texas in May 2008 and an $18,000 hot air balloon purchased in Texas in June 2008.[3]

Balloons sought the AHC's review of the director's decisions in two complaints. In its first complaint filed in April 2011, Balloons appealed the director's denial of its request for a refund of the sales taxes on rides purchased in Missouri directly from Balloons. In its second complaint filed in June 2011, Balloons challenged the director's assessment of sales taxes on the amount paid to Balloons by third-party vendors and use taxes on the balloon and inflator fan purchased in Texas.

---

[3] Balloons' audit initially resulted in a finding that Balloons was liable for use taxes in the amount of $1,698.31, and Balloons agreed to make a partial payment of $617.17. This payment, however, was made "under protest" because Balloons disputed its liability for use taxes on items it claimed were personal in nature or purchased online for its business in Albuquerque. After Balloons made its "payment under protest," the director then assessed $1,184.65 in use tax.

After a hearing, the AHC ruled partially in favor of the director on both complaints.[4]   Balloons now petitions this Court for review of the AHC's decision. Because review of the AHC's decision involves construction of the revenue laws of the state, this Court has jurisdiction.  Mo. Const. art. V, sections 3, 18.

## Standard of Review

This Court reviews the decision of the AHC pursuant to section 621.189, which directs this Court to uphold the AHC's decision if it is "authorized by law and supported by competent and substantial evidence upon the record as a whole unless clearly contrary to the reasonable expectations of the General Assembly." *Street v. Dir. of Revenue*, 361 S.W.3d 355, 357 (Mo. banc 2012).  This Court reviews the AHC's interpretation of revenue law *de novo*. *Id.*

## Section 144.020(2) is Preempted by the Federal Anti-Head Tax Act

Balloons first challenges the AHC's decision that Balloons was not entitled to a refund of the sales taxes it paid and was liable for additional sales taxes assessed, pursuant to section 144.020.1, on the hot air balloon rides it sold.  Balloons claims that it does not owe sales tax because the plain language of the AHTA prohibits states from taxing proceeds from the sale of untethered hot air balloon rides.

Balloons concedes that, if not for the AHTA, it would owe taxes under section 144.020.1.  Section 144.020 imposes a tax on "all sellers for the privilege of engaging in

---

[4]  The AHC ruled in favor of Balloons' claim the items used for personal use should not have been subject to the use tax.  After deducting the taxes paid on Balloon's purchases subject to use tax in 2005, the amount subject to use tax in 2005 is less than $2,000. Therefore, the AHC also found that Balloons does not have to pay consumer's use tax for that year.

5

the business of selling tangible personal property or rendering taxable service at retail in this state." The tax imposed on Balloons was "equivalent to four percent of the amount paid for admission and seating, accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events." Section 144.020.1(2). Balloons claims, however, that the federal AHTA prohibits the director's assessment of taxes under section 144.020.1 on its sales of untethered hot air balloon rides. Pursuant to the Supremacy Clause of the United States Constitution, the imposition of sales tax under section 144.020 is preempted by the AHTA when the tax imposed is in conflict with the AHTA. *See* United States Const. art. VI, cl. 2; *see also State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 148 (Mo. banc 2010).

Originally codified at 49 U.S.C. § 1513(a), and now codified at 49 U.S.C. § 40116, the AHTA prohibits a state from imposing a tax, fee, head charge or other charge on an individual traveling in air commerce or the sale of air transportation to an individual. The prohibitions read:

> (b) Prohibitions. Except as provided in subsection (c) of this section . . . a State . . . may not levy or collect a tax, fee, head charge, or other charge on—(1) an individual traveling in air commerce; (2) the transportation of an individual traveling in air commerce; (3) the sale of air transportation; or (4) the gross receipts from that air commerce or transportation.

> (c) A State or political subdivision of a State may levy or collect a tax on or related to a flight of a commercial aircraft or an activity or service on the aircraft only if the aircraft takes off or lands in the State or political subdivision as part of the flight.

6

49 U.S.C. § 40116.[5]   Because Balloons is disputing state taxes levied on the *gross*

*receipts* of its hot air balloon rides, the applicable prohibition in this case is section

40116(b)(4), which pertains specifically to taxes on gross receipts from air commerce.[6]

The parties did not cite any cases, and no cases were found, determining whether the sale

of rides on untethered hot air balloons falls within these provisions of the AHTA.

Therefore, as a matter of first impression, this Court considers whether the AHTA

prohibits states from taxing the sale of untethered hot air balloon rides.

---

[5] The language in subdivision (c) of section 40116 appears to exempt the prohibitions in subdivision (b) from taxes on an aircraft that takes off or lands in the state imposing the tax.  Such an interpretation, however, has been rejected by a federal court.  *See Twp. Of Tinicum v. U.S. Dep't of Transp.*, 582 F.3d 482, 490 (3rd Cir. 2009).  Rather, subdivisions (b) and (c), when read together, provide that "a tax falling within an enumerated category [of subdivision (b)] is prohibited, and a tax not falling within an enumerated category is not prohibited, *except* that a tax on a subject flight lacking a ground nexus *is* prohibited even if such tax does not belong to an enumerated category." *Id.*   A contrary interpretation would render subdivision (b) superfluous because subdivision (c) would subsume subdivision (b).  Therefore, the Court finds the federal interpretation of the interaction between subdivisions (b) and (c) persuasive and finds that the AHTA bans a state tax on any aircraft that takes off or lands in Missouri if it falls within any of the four prohibitions enumerated in subdivision (b).

[6] The AHC found that the AHTA does not preempt collecting a sales tax from Balloons because individuals do not "travel" nor are they "transported" in hot air balloons.  It is not clear, however, that section 40116(b)(4) requires "travel" or "transportation" for the preemption of a tax on the gross receipts from "air commerce."  Even if it did, the FAA, charged with regulating airspace travel, characterizes the movement of hot air balloons as launching, then "*travel[ing],*" then landing.  *Balloon Flying Handbook*, FAA-H-8082-11A (DOT/FAA, 2008); *see also* 49 U.S.C. 106(g) (authority granting the FAA with the duty to promulgate regulations to promote safety in air commerce).  In its handbook, the FAA also states that hot air balloons are "distinct from other aircraft in that [they] *travel* by moving with the wind."  The FAA advises that "balloon flight *travel*" can be predicted using certain preflight tactics, *id.* at 3-2 (emphasis added), and that the pilot "should always face the direction of *travel*, especially at low altitudes, *id.* at 7-11 (emphasis added).

7

A court's analysis of the scope of a federal preemption statute begins with its text, but "interpretation of that language does not occur in a contextual vacuum. Rather, a court's interpretation is informed by two presumptions about the nature of pre-emption." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996). First, there is a presumption that a federal statute does not preempt the historic police powers of the states unless Congress clearly intended preemption. *Id.* Second, a court should be guided by the congressional purpose behind enacting the statute when determining the scope of that statute's preemption. *Id.* at 485-86. Congressional purpose and intent, while primarily ascertained from "the language of the pre-emption statute and the 'statutory framework' surrounding it," also is revealed in the "structure and purpose of the statute as a whole." *Id.* at 485-86. A preemption statute's purpose and structure, of course, is revealed in the text but also in the "reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.*

The AHTA is contained in subtitle VII—"Aviation Programs"—of Title 49, the transportation code. *See* 49 U.S.C. § 40116. Subtitle VII consists of five "parts:" Air Commerce and Safety (Part A), Airport Development and Noise (Part B), Financing (Part C), Public Airports (Part D), and Miscellaneous (Part E). *See* 49 U.S.C. §§ 40101-50105. Part A, "Air Commerce and Safety," contains the AHTA and is divided further into four subparts, including General Provisions (Subpart I) under which the AHTA falls. *See* 49 U.S.C. §§ 40101-40130. Subpart I, "General Provisions," consists of 30 different sections ranging from the topic of sovereignty and the use of airspace (§ 40103) to safety

8

of air commerce (§ 40104) to state taxation in the AHTA (§ 40116). Also contained in subpart I is a section defining various statutory terms, including terms used in the AHTA. *See Id.* Importantly, section 40102 defines those terms as they apply to the entirety of Part A, "Air Commerce and Safety." 49 U.S.C. § 40102(a). Accordingly, the definitions of the terms contained in the AHTA cannot be viewed as if they were intended to apply specifically to the AHTA or the taxes it preempts, but rather, as they apply to "Air Commerce and Safety" as a whole.

"Air commerce" is defined in subtitle VII as "[1] foreign air commerce, [2] interstate air commerce, [3] the transportation of mail by aircraft, [4] the operation of an aircraft within the limits of a Federal airway, or [5] the operation of aircraft that directly affects, or may endanger safety in, foreign or interstate air commerce." 49 U.S.C. § 40102(a)(3). Balloons does not assert that it operates in foreign air commerce or transports mail. Rather, Balloons claims it operates in "interstate commerce," "within federal airways," or as "an aircraft that directly affects or may endanger safety in interstate air commerce."

The evidence before the AHC was that fewer than 10 percent of Balloons' flights travel through airspace over any place outside of Missouri, so only a small portion of Balloons' flights could be found to operate in "interstate commerce." Additionally, the findings of the AHC raise the issue whether Balloons presented sufficient evidence of the location of federal airways to prove it operates its balloons "within federal airways." Therefore, the final category—operation of aircraft that directly affects or may endanger safety in interstate or foreign air commerce—will be considered first.

9

To fall within this category of air commerce, Balloons' hot air balloons must be aircraft. Under Part A, "Air Commerce and Safety," "aircraft" is defined as "any contrivance invented, used, or designed to navigate, or fly in, the air." 49 U.S.C. § 40102(a)(6). The director concedes that a hot air balloon falls within this definition. The standard for determining whether an aircraft directly affects or may endanger safety in interstate, overseas or foreign air commerce was discussed by the Court of Appeals for the Tenth Circuit in *Hill v. National Transportation Safety Board*, 886 F.2d 1275, 1280 (10th Cir. 1989). In *Hill*, the court considered the definition of "air commerce" from 49 U.S.C. App. § 1301(4), which is nearly identical to the definition under section 40102(a)(3), in the context of discipline of a helicopter pilot's license.[7] *Id.* The court held that the term "air commerce" "should be construed broadly to effectuate a valid congressional purpose," and the valid purpose is to protect air safety. *Id*. at 1279-80 (quoting *FAA v. Landy,* 705 F.2d 624, 634 (2d. Cir. 1983)). Consistent with this purpose, the court in *Hill* determined that there need not be any actual endangerment or even a demonstrable threat but, rather, there must be only the *potential* for the aircraft to endanger safety in interstate air commerce. *Id.* at 1280; *see Gorman v. Nat'l Trans. Safety Bd.*, 558 F.3d 580, 591 (D.C. Cir. 2009). The court's broad interpretation of the

---

[7] In *Hill,* the FAA suspended and the National Transportation Safety Board affirmed the suspension of a helicopter pilot's license after he piloted two flights resulting in personal injury and property damage. 866 F.2d at 1276-77. In affirming that ruling of the NTSB, the court examined the various statutes giving the FAA the authority to regulate air safety and, in turn, to suspend the pilot's license. *Id*. at 1278-80. One of those sections, 49 U.S.C. App § 1429(a), authorized the FAA to revoke or suspend an aviation certificate if it is determined that "safety in *air commerce* or air transportation and the public requires." *Id.* (Emphasis added). The court went on to apply the definition of "air commerce" from section 1301(4). *Id.*

potential to endanger safety and, in turn, "air commerce" was based on the Federal Aviation Administration's (FAA) broad authority to regulate air safety under Subtitle I, "Department of Transportation" of the transportation code. *Id.* at 1278-80; *see also* 49 U.S.C. § 106(g).

Like the AHTA, the FAA is codified under subtitle VII and is governed by the definitions in § 40102. The FAA[8] was created and given its broad authority in the Federal Aviation Act of 1958[9] to provide safe and efficient use of navigable airspace by both civil and military operations. H.R. Rep. No. 85–2360, at 1 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3741, 3741; *see Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 894-95 (2d Cir. 1960). The act requires the FAA administrator to "promote safe flight of civil *aircraft* in *air commerce*" by prescribing various minimum safety standards and regulations. 49 U.S.C. § 44701(a)(1) (emphasis added); *see e.g. Morris v. Cessna Aircraft Co.*, 833 F. Supp. 2d 622, 627 (N.D. Tex. 2011). Regulations codified by the FAA to promote the safety of "aircraft" within "air commerce" promotes safety in the same "air commerce" that is contemplated by the AHTA because the definition of "air commerce" in section 40102 applies to the statutes governing the FAA and the statutes governing the AHTA. 49 U.S.C. § 40102(a)(3); § 40116; § 106(g).

The FAA has fulfilled its duty to promote the "safe flight of aircraft[s] in air commerce" by promulgating regulations governing, *inter alia*, the safe operation of hot air balloons. Perhaps the most applicable to the issues here are the regulations found in

---

[8] When enacted, the Federal Aviation Act actually created the "Federal Aviation Agency," which later became the Federal Aviation Administration. *See* Pub. L. No. 85-726, 1958 U.S.C.A.A.N. (72 Stat. 731) 855, 870.
[9] The Federal Aviation Act currently is codified at 49 U.S.C. § 44701.

11

chapter 1, subchapter C "Aircraft" and subchapter F "Air Traffic and General Operating Rules." *See* 14 C.F.R. §§ 31.1-.85, 91.1-.171. These regulations dictate various measures—to be taken before, during, and after the balloon flight—to ensure not only the safety of the hot air balloon and its passengers but also the safety of other aircraft. *See Id.*

For instance, a large portion of subchapter C pertains to "airworthiness standards" for manned hot air balloons. *See* 14 C.F.R. § 31.1-31.85. Dictating one such airworthiness standard, conspicuity, section 31.83 requires that the exterior surface of the hot air balloon must be of "contrasting color or colors so that it will be conspicuous during operation." 14 C.F.R. § 31.28. The FAA's purpose in promulgating section 31.83 is obviously to decrease the potential danger posed to both the hot air balloon and to other aircraft in flight by ensuring that hot air balloons are easily visible. The FAA's concern for hot air balloons' interaction with other aircraft is further apparent in section 91.113, which dictates priorities among converging aircraft. 14 C.F.R. § 91.113. This regulation provides that "[w]hen aircraft of the same category are converging at approximately the same altitude . . . , the aircraft to the other's right has the right-of-way. If the aircraft are of different categories, —(1) a balloon has the right-of-way over any other category of aircraft." 14 C.F.R. § 91.113(d)(1). Section 91.113(d)(1) demonstrates that hot air balloons *do* have the potential to endanger safety in air commerce and that preventive measures are needed to curb that potential. Once again, like section 31.83, section 91.113(d)(1) does not state the FAA's purpose in requiring all other aircraft to yield to hot air balloons. *See id.* It again can be inferred, however, that the purpose is grounded in a hot air balloon pilot's inherent lack of control of the balloon—a characteristic that

12

undeniably heightens a hot air balloon's potential to endanger safety in air commerce. Undoubtedly, an aircraft with engines, propellers, and steering mechanisms more easily can maneuver to avoid a collision with an aircraft whose direction is controlled strictly by the wind pattern. Recognizing this inherent handicap of hot air balloons, the FAA was compelled to promulgate regulations to prevent problems between hot air balloons and other in-flight aircraft.

The FAA's concern for hot air balloons' lack of control is further evident in the FAA handbook for hot air balloons, where many of the regulations codified in title 14 of the code of federal regulations are given an applicable meaning. *See Balloon Flying Handbook,* FAA-H-8082-11A (DOT/FAA, 2008).[10] The handbook consists of 11 chapters of varying topics, ranging from balloon flight training and preflight preparation, to the national airspace system, to weather theory and inflight maneuvers. *See Id.* In the handbook, the FAA discusses the physics of the hot air balloons, explaining that the balloon is the "simplest of all flying machines" in that it "travels by moving with the wind and cannot be propelled through the air in a controlled manner." *Id.* at 2-2. It goes on to warn the pilot to be "vigilant for obstacles, especially power lines and traffic." *Id.* at 7-11.

As demonstrated through these statutes, regulations and guidelines, the operation of untethered, pilot-driven hot air balloons has the potential to endanger safety in interstate air commerce. Indeed, if hot air balloons did not have the potential to endanger

---

[10] This handbook is available online. *See Balloon Flying Handbook*, FAA-H-8082-11A (DOT/FAA, 2008), *available at* http://www.faa.gov/regulations_policies/ handbooks_manuals/aircraft.

safety in interstate air commerce, then the FAA could not regulate them under its broad authority to regulate air safety. *See* 49 U.S.C § 106(g). But the FAA *does* regulate hot air balloons, which demonstrates to this Court that hot air balloons do have the potential to endanger safety in interstate air commerce. Because hot air balloons have a potential to endanger safety in interstate air commerce, hot air balloons fall within the definition of "air commerce" in section 40102.

While clearly not binding, an opinion letter from the United States Department of Transportation and private letter tax rulings from the departments of revenue of various states are consistent with this Court's holding. The regulating authorities each conclude that the AHTA would preempt a state tax on gross receipts on hot air balloon rides because hot air balloons operate in air commerce. *See Question on Taxation of Hot Air Balloon Flights*, U.S. Dept. of Transp. Off. Gen. Counsel Op. (June 29, 2010); *See also* Kan. Private Letter Ruling No. P-2010-003 (June 30, 2010); Wis. Rev. Ruling No. W0124006 (Mar. 22, 2001); N.M. Rev. Ruling No. 422-98-1 (Apr. 29, 1998); Ariz. Trans. Tax Ruling No. TPR 92-1 (Mar. 10, 1992).

Balloons' second claim that it did not owe sales taxes on balloon rides sold by out-of-state third-party vendors under the "resale exemption" in section 144.210.1 is rendered moot by the finding that none of its sales are subject to tax under section 144.020.1. Accordingly, the rulings by the AHC on Balloons' claims for a refund on sales taxes and assessment of future sales tax are reversed.

14

**Taxpayer is Liable for Use Taxes on Equipment Purchased Outside of Missouri**

Balloons also challenges the AHC's assessment of use taxes on a hot air balloon and inflator fan purchased in Texas but used in Missouri. It asserts that the AHC erred in upholding the assessment of those taxes because Balloons qualifies for a tax exemption under section 144.030.2 in that it is a "common carrier" for purposes of the exemption.

Tax exemptions are to be construed strictly, and the taxpayer claiming the exemption bears the burden of showing that it falls within the statutory language. *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012). Exemptions are allowed only on "clear and unequivocal proof," and any doubt is resolved in favor of taxation. *Id.*

Missouri's use tax at issue is imposed on "the privilege of storing, using, or consuming within this state any article of tangible personal property." Section 144.610. An entity otherwise liable for this use tax, however, may escape liability if it qualifies under an applicable tax exemption. Section 144.615(3).[11] The two exemptions under which Balloons makes its claims, section 144.030.2(3) and (20), pertain to "common carriers." Section 144.030.2(3) and (20) provide exemptions for:

> (3) Materials, replacement parts and equipment purchased for use directly upon, and for the repair and maintenance or manufacture of, motor vehicles, watercraft, railroad rolling stock, or aircraft engaged as common carriers of persons or property . . .
> (20) All sales of aircraft to common carriers for storage or for use in interstate commerce . . . .

---

[11] Section 144.615(3) makes sales tax exemptions applicable to the use tax in section 144.610. It provides in relevant part: "there are specifically exempted from the taxes levied in sections 144.600 to 144.745: . . . (3) Tangible personal property, the sale of which, if made in this state, would be exempt from . . . Missouri sales tax pursuant to the provisions of subsection 2 of section 144.030." Section 144.615(3).

15

Balloons' purchase of a hot air balloon and an inflator fan undisputedly qualify as either "aircraft" or "material, replacement parts and equipment purchased for use directly upon aircraft." *Id.* The dispute, then, is whether Balloons meets the criteria for being a "common carrier." Because section 144.030 does not provide a statutory definition of "common carrier," this Court must otherwise ascertain its meaning.

This Court's primary responsibility in statutory interpretation is to determine the legislative intent from the language of the statute and to give effect to that intent. *Aquila,* 362 S.W.3d at 4. "Absent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999). Moreover, when construing a statute, this Court considers statutes involving related subject matter if such statutes provide necessary definitions or shed light on the meaning of the statute being construed. *BASF Corp. v. Dir. of Revenue*, 392 S.W.3d 438, 444 (Mo. banc. 2012) (citing *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991)). "When the legislature enacts a statute referring to terms that have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." *Cook Tractor Co., Inc. v. Dir. of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006).

Although section 144.030 does not define "common carrier," this Court previously has ascertained the plain and ordinary meaning of "common carrier" under each section 144.030.2 exemption claimed by Balloons. *See Cook,* 187 S.W.3d at 873-74 (interpreting "common carrier" under section 144.030.2(3)); *Emerson Elec. Co. v Dir. of Rev.*, 133

16

S.W.3d 31, 32 (Mo. banc 2004) (interpreting "common carrier" under section 144.030.2(20)). In doing so, this Court looked to a number of sources, including dictionary definitions, statutory definitions from related statutes, the state regulations of the Missouri Department of Revenue and prior Missouri case law and determined that the plain and ordinary meaning of "common carrier" is both well-established by Missouri case law and consistent with statutory and dictionary definitions. *Cook Tractor Co.,* 187 S.W.3d at 874; *see Emerson Elec. Co.*, 133 S.W.3d at 32 (referencing two different statutory provisions defining "common carrier" to interpret "common carrier" in section 144.030.2(20)).

Webster's dictionary defines common carrier as "a carrier offering its services *to all comers*. . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 458 (unabridged 1993) (emphasis added). Similarly, Black's Law Dictionary states that a "common carrier" is a "commercial enterprise that *holds itself out to the public* as offering to transport passengers or freight for a fee. A common carrier is generally required, by law, to transport freight or passengers . . . , *without refusal*, if the approved fare or charge is paid." BLACK'S LAW DICTIONARY 242 (9th ed. 2009) (emphasis added). The director's regulations offers an almost identical regulation, defining a common carrier as "any person that holds itself out to the public as engaging in the transportation of passengers or property for hire [and is] required by law to transport passengers . . . without refusal if the fare or charge is paid." 12 CSR-10-110.300(2)(A); *Cook Tractor Co.*, 187 S.W.3d at 874.

17

Finally, chapter 390, which regulates motor carriers and previously has been used by this Court to interpret section 144.030.2(3), defines a "common carrier" as "any person which holds itself out to the general public to engage in the transportation by motor vehicle of passengers or property for hire or compensation upon public highways and airlines engaged in intrastate commerce[.]" Section 390.020(6); *see Cook Tractor Co.,* 187 S.W.3d at 873; *Emerson Elec. Co.,* 133 S.W.3d at 32. Common among these definitions is the requirement that to be a "common carrier" an entity must "hold itself out" to the public or "to all comers." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 458 (unabridged 1993); *see also* BLACK'S LAW DICTIONARY 242 (9th ed. 2009); 12 CSR-10-110.300(2)(A); section 390.020(6).

This Court has interpreted "common carrier" consistently with these dictionary, statutory, and regulatory definitions since its first interpretation of the term nearly 80 years ago. *See State ex. rel. Anderson v. Witthaus,* 102 S.W.2d 99 (Mo. banc 1937). In *Anderson*, this Court defined "common carrier" as "anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place . . . and so invites custom of the public, is in estimation of the law a 'common carrier.'" *Id.* at 99. Since this initial discussion of "common carrier*,"* this Court has expounded on what exactly a carrier must do in order to "hold itself out to the public" and has determined that "holding out" can be accomplished by "advertising or soliciting by agents." *Cook Tractor Co.,* 187 S.W.3d at 874. In addition, it may also result "from a course of business or conduct." *Id.* (citing *State ex rel. Pub. Serv. Comm'n v. Logan,* 411 S.W.2d 86, 88-89 (Mo. 1967)). Either way, it "must be a public offering of the

18

service that communicates that it is available to those who wish to use it." *Id.* A common carrier does not have the ability to pick and choose whom it serves, but rather must "hold himself out to carry for everyone who asks him." *Id*.

Balloons challenges the AHC's decision that it was not a common carrier under this law. The AHC specifically concluded that Balloons did not sufficiently demonstrate that it held itself "out to carry everyone" who asks it because there was evidence that Balloons "chooses" whether to accept particular passengers for hot air balloon rides. The AHC found this exercise of discretion precluded Balloons from being a "common carrier" under section 144.030.2. The evidence relied on by the AHC was the testimony of Robert Fear, the president of Balloons:

Q: A customer walks into your place and presents you with a gift certificate. You're obligated to fly that customer based on the gift certificate?

A: Not at all.

Q: You fly that customer based on the gift certificate?

A: If I choose to fly that customer, yeah.

Despite this testimony before the AHC, Balloons now asserts that it carries anyone that pays for a ride as long as weather conditions permit, which, coupled with its advertising, proves Balloons is a "common carrier" under the common law definition. *See Id.* This current contention by Balloons, however, does not change the fact that the evidence heard by the AHC from Mr. Fear demonstrated that Balloons exercises discretion as to whether it flies a customer, and this discretion contradicts Missouri case law requiring a "common carrier" to carry all people indifferently. *Cook Tractor Co.,*

19

*Inc.,* 187 S.W.3d at 874. Accordingly, the AHC could properly believe this evidence and conclude that Balloons was not entitled to a section 144.040.2(3) or (20) exemption for the purchases at issue because Balloons failed to show that it operated as a "common carrier" as required under those exemptions. Because the AHC's decision is authorized by law and supported by competent and substantial evidence upon the whole record, this Court affirms the AHC's decision as to the assessment of use tax.

### Conclusion

The sales taxes assessed on Balloons for all hot air balloon rides—those purchased directly from Balloons in Missouri and those purchased by flight certificate from out-of-state third-party vendors—are state sales taxes on "individuals traveling in air commerce," which are prohibited and, consequently, preempted by the AHTA. Accordingly, the AHC's decision upholding the director of revenue's assessment of these taxes on Balloons is unauthorized by law and is reversed.

Conversely, the AHC's decision upholding the assessment of use taxes on Balloons is authorized by law and also supported by competent and substantial evidence. In light of strict construction of tax exemptions and the taxpayer's burden of proving that it falls within the statutory language, the AHC was justified in determining that Balloons was not entitled to a section 144.030.2(3) or (20) exemption because it failed to show it operated as a "common carrier." Accordingly, the decision of the AHC is affirmed in part and reversed in part, and the case is remanded.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.

20