ACCEPTED
15-24-00113-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/7/2025 8:50 PM
CHRISTOPHER A. PRINE
CLERK

**Cause No. 15-24-00113-CV**

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/7/2025 8:50:02 PM
CHRISTOPHER A. PRINE
Clerk

GLEN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE
STATE OF TEXAS AND KEN PAXTON, ATTORNEY GENERAL OF
THE STATE OF TEXAS,

*Appellants,*

v.

AMERICAN AIRLINES, INC.,

*Appellee.*

---

### BRIEF OF APPELLEE

---

Mary A. McNulty
State Bar No. 13839680
Mary.McNulty@hklaw.com

Leonora Meyercord
State Bar No. 24074711
Lee.Meyercord@hklaw.com

Richard B. Phillips, Jr.
State Bar No. 24032833
Rich.Phillips@hklaw.com

HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214-964-9500
Fax: 214-964-9501

**COUNSEL FOR APPELLEE**

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

| Appellants | Counsel for Appellants |
|---|---|
| Glenn Hegar, Comptroller of Public Accounts of the State of Texas | Kyle Pierce Counce<br>kyle.counce@oag.texas.gov |
| Ken Paxton, Attorney General of the State of Texas | Amanda Romenesko<br>mandy.romenesko@oag.texas.gov |
| | Ray Langenberg<br>ray.langenberg@cpa.texas.gov |
| | Deborah J. Rao<br>deborah.rao@oag.texas.gov |
| | Alyson "Ally" Thompson<br>ally.thompson@oag.texas.gov |
| | Office of the Attorney General<br>Tax Litigation Division<br>P.O. Box 12548<br>Austin, Texas 78711<br>Tel: 512-463-3112<br>Fax: 512-478-4013 |

| Appellee | Counsel for Appellee |
|---|---|
| American Airlines, Inc. | Mary A. McNulty<br>Mary.McNulty@hklaw.com<br><br>Leonora Meyercord<br>Lee.Meyercord@hklaw.com<br><br>Richard B. Phillips, Jr.<br>Rich.Phillips@hklaw.com<br><br>Meghan McCaig[1]<br><br>HOLLAND & KNIGHT LLP<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201<br>214-964-9500<br>Fax: 214-964-9501 |

---

[1]  Ms. McCaig was counsel for Appellee in the trial court. She is no longer associated with Holland & Knight LLP, and she has withdrawn from representing Appellee in this appeal.

# TABLE OF CONTENTS

                                                                        Page

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . .   i

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ix

Statement Regarding Record References . . . . . . . . . . . . . . . . . . .   x

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xi

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    (1)  American's Franchise Tax Reports and
        Refund Claims . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    (2)  The Parties' Dispute . . . . . . . . . . . . . . . . . . . . . . .   3

    (3)  The Trial Court's Judgment, Findings of
        Fact, and Conclusions of Law . . . . . . . . . . . . . . . . . . .   4

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    1.  The AHTA preempts state taxes on the gross
        receipts from air commerce or transportation,
        regardless of the label the state gives to the
        tax. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

A.   The AHTA forbids states from taxing gross receipts from air commerce or transportation. . . . . . . . . . .  9

B.   AHTA preemption applies no matter how the state labels the tax.  . . . . . . . . . . . . . . . . 11

2.   As applied to American's AHTA revenues, the franchise tax is an improper gross-receipts tax. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A.   There is no dispute that the AHTA revenues are receipts from air commerce or transportation. . . . . . . . . . . 13

B.   As the trial court properly held, the franchise tax is illegally imposed on the AHTA revenues. . . . . . . . . . . 14

C.   Contrary to the Comptroller's assertion, this Court can decide that the AHTA bars taxation of discrete revenue streams.  . . . . . . . . . . . . . . . . . 16

3.   The Comptroller's other arguments are unavailing. . . . . . . . . . . . . . . . . . . . . . . . . . 19

A.   The AHTA preempts gross-receipts taxes of general applicability to the extent they seek to tax air commerce or air transportation. . . . . . . . . . . . . 20

B.   The limited exclusions from "total revenue" do not preclude preemption. . . . . . . . . . . . . . . . . . . . 23

C.   There is more than sufficient evidence to support Finding of Fact 8. . . . . . . . . . . . . . . . . . 24

D.   The Comptroller's "Catch-22" argument is nonsensical. . . . . . . . . . . . . . . . . . . . . . . . 28

E.  The 70% adjustment does not change the
    analysis. . . . . . . . . . . . . . . . . . . . . . . . .   30

F.  The other parts of the franchise tax
    determination do not affect the analysis.  . . . . . . . . . . . . 31

4.  The trial court correctly rejected the
    Comptroller's counterclaim.  . . . . . . . . . . . . . . . . . . . 33

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . 36

# Index of Authorities

Page

## Cases

*Air Transp. Ass'n of Am. v. New York State Dep't of Tax'n & Fin.*,
91 A.D.2d 169 (N.Y. App. Div. 1983) . . . . . . . . . . . . . 10, 12, 18, 19

*Aloha Airlines, Inc. v. Dir. Of Tax'n of Hawaii*,
464 U.S. 7 (1983) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Arraby Props., LLC v. Brown*,
695 S.W.3d 532 (Tex. App.—Houston [1st Dist.] 2023,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Balloons Over the Rainbow, Inc. v. Dir. of Revenue*,
427 S.W.3d 815 (Mo. 2014) . . . . . . . . . . . . . . . 10, 16, 21, 22

*Boggs v. Boggs*,
520 U.S. 833 (1997) . . . . . . . . . . . . . . . . . . . . . . 17

*Cain v. Bain*,
709 S.W.2d 175 (Tex. 1986) . . . . . . . . . . . . . . . . . . 26

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) . . . . . . . . . . . . . . . . . . 26

*Hegar v. Am. Multi-Cinema, Inc.*,
605 S.W.3d 35 (Tex. 2020) . . . . . . . . . . . . . . . . . . . 18

*Hegar v. Gulf Copper & Mfg. Corp.*,
601 S.W.3d 668 (Tex. 2020) . . . . . . . . . . . . . . . . . . . 18

*Kamikawa v. Lynden Air Freight, Inc.*,
968 P.2d 653 (Haw. 1998) . . . . . . . . . . . . . . . . 10, 22, 32

*Secured Env't Mgmt., Inc. v. Tex. Nat. Res. Conservation Comm'n*,
97 S.W.3d 246 (Tex. App.—Austin 2002, pet. denied) . . . . . . . . . 17

*Skilled Craftsmen of Tex., Inc. v. Tex. Workers' Comp. Comm'n,*
    158 S.W.3d 89 (Tex. App.—Austin 2005, pet. dism'd)  . . . . . . . 16, 17

*Syed v. Masihuddin,*
    521 S.W.3d 840 (Tex. App.—Houston [1st Dist.] 2017,
    no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United Rentals N. Am., Inc. v. Evans,*
    668 S.W.3d 627 (Tex. 2023) . . . . . . . . . . . . . . . . . . . . . 25

## STATUTES

49 U.S.C. § 40102(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

49 U.S.C. § 40102(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

49 U.S.C. § 40102(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

49 U.S.C. § 40102(a)(22)-(25) . . . . . . . . . . . . . . . . . . . . . . 14

49 U.S.C. § 40116(b) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 17

49 U.S.C. § 40116(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

29 U.S.C. § 40116(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FAA Reauthorization Act of 2018, Pub. L. No. 115-254, § 159,
    132 Stat. 3186, 3220 (2018) . . . . . . . . . . . . . . . . . . . . . 10

HAW. REV. STAT. § 239–6 (1976) . . . . . . . . . . . . . . . . . . . 11

TEX. TAX CODE § 151.007(c) . . . . . . . . . . . . . . . . . . . 23

TEX. TAX CODE §§ 151.301–.3595 . . . . . . . . . . . . . . . 23

TEX. TAX CODE § 151.426 . . . . . . . . . . . . . . . . . . . . . 23

TEX. TAX CODE § 151.4261 . . . . . . . . . . . . . . . . . . . . 23

TEX. TAX CODE § 171.001 . . . . . . . . . . . . . . . . . . . . . 1

TEX. TAX CODE § 171.101(a) . . . . . . . . . . . . . . . . . 14, 31

Page

TEX. TAX CODE § 171.1011(c)(1). . . . . . . . . . . . . . . . . . . 14, 15

TEX. TAX CODE § 171.1121 . . . . . . . . . . . . . . . . . . . . . 15

## OTHER AUTHORITIES

34 Tex. Admin. Code § 3.591(b)(3). . . . . . . . . . . . . . . . . . 15

State Office of Admin. Hearings Dkt. No. 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.26,
  Comptroller of Public Accounts, 2017 WL 3842067 (May 3,
  2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# STATEMENT OF THE CASE

***Nature of the Case:*** This appeal arises from a dispute between American Airlines, Inc. and the Texas Comptroller of Public Accounts about the calculation of American's franchise tax. (2CR:5–7.) American contends that the federal Anti-Head Tax Act (49 U.S.C. § 40116) preempts the franchise tax as it applies to American's gross receipts from baggage fees, passenger ticket sales, and freight transportation. (*Id.*) American seeks a refund of the portion of its franchise tax attributable to its receipts from baggage fees. (2CR:14.) The Comptroller counterclaimed for recovery of additional franchise tax because American excluded receipts from passenger ticket sales and freight transportation from its franchise tax calculation. (2CR:28.)

***Course of Proceedings:*** The case was tried to the bench (the 200th Judicial District Court, Travis County, the Honorable Jessica Mangrum presiding). (1RR:1.)

***Trial Court's Disposition:*** The trial court concluded that the Anti-Head Tax Act preempts the franchise tax to the extent the Comptroller seeks to tax American's gross receipts from baggage fees, passenger ticket sales, and freight transportation. (2CR:549–50.) Accordingly, the trial court rendered judgment for American on its refund claim. (2CR:232.) The court also rendered judgment that the Comptroller take nothing on its counterclaim. (2CR:232.)

# Statement Regarding Record References

The record on appeal comprises the following:

- The clerk's record from Cause No. D-1-GN-15-003101, which was filed in this Court on November 18, 2024. Following the Comptroller's pattern, this will be cited as 1CR:[page number].

- The clerk's record from Cause No. D-1-GN-16-000621, which was filed in this Court on November 18, 2024. Following the Comptroller's pattern, this will be cited as 2CR:[page number].

- The 4 volume reporter's record, which was filed in this Court on December 5, 2024 and will be cited as [volume]RR:[page].

- Plaintiff's exhibits admitted at trial will be cited as PX[number].

- Defendant's exhibits admitted at trial will be cited DX[number].

# ISSUES PRESENTED

1.  The trial court correctly concluded that the Anti-Head Tax Act preempts the Texas franchise tax as applied to American's gross receipts from baggage fees and that American is entitled to a refund of the tax paid on those receipts.

2.  The trial court correctly rendered judgment that the Comptroller take nothing on his counterclaim for additional tax because the Anti-Head Tax Act also preempts the Texas franchise tax as applied to American's gross receipts from passenger ticket sales and freight transportation.

## STATEMENT OF FACTS

### (1) American's Franchise Tax Reports and Refund Claims

American Airlines, Inc. is an air carrier based in Fort Worth, Texas. (2RR:53; 2CR:547.) It operates a fleet of approximately 1,000 aircraft and transports people, baggage, and freight to destinations in North America, the Caribbean, Latin America, Europe, and the Asia-Pacific Region. (2RR:53; 2CR:547.) Because American does business in Texas, it is subject to the Texas franchise tax. *See generally* TEX. TAX CODE § 171.001. To pay the franchise tax, taxpayers file a franchise tax report for a "report year." (*See* 2RR:41.) A "report year" refers to the year the franchise tax report is due, but the franchise tax report covers the prior calendar year. (2RR:55.) Therefore, the 2015 franchise tax report at issue here covers calendar year 2014.

In late 2013, American filed refund claims with the Comptroller for a portion of the Texas franchise tax it paid for report years 2009 through 2013. (1CR:6.) American's refund claims were premised on the federal Anti-Head Tax Act ("AHTA"). (1CR:4–5.) The AHTA preempts state gross-receipts taxes on air commerce or air transportation. 49 U.S.C. § 40116(b). American contends that the AHTA preempts the Texas franchise tax as applied to American's receipts from baggage fees, passenger tickets sales, and freight

transportation (collectively, "AHTA revenues"). (1CR:4–5.) When American filed its franchise tax report for report year 2014, it paid the portion of the tax attributable to its AHTA revenues under protest. (1CR:6.)

In 2014, the Comptroller sought an opinion from the federal Department of Transportation (the agency responsible for administering the AHTA) about whether the AHTA preempted the Texas franchise tax as applied to AHTA revenues. (PX11; 2CR:548.) The Comptroller's letter made many of the same arguments he makes in this Court. (PX11.) The Department of Transportation disagreed with the Comptroller's position. (2CR:548; 2RR:183–84.)

After receiving the Department of Transportation's opinion in 2014, the Comptroller told American that it agreed that the AHTA preempted the Texas franchise tax on AHTA revenues. (2CR:548.) The Comptroller thus refunded the franchise tax that American paid under protest with its 2014 franchise tax report. (2RR:59; 2CR:548.)[2]

---

[2]   Despite informally agreeing to refund the disputed amounts for the 2009–2013 report years after DOT issued its opinion, the Comptroller changed course and denied those refund claims. (2CR:6; PX9.) American timely requested refund hearings, which the Comptroller put on hold indefinitely pending the outcome of this case.

**(2) The Parties' Dispute**

In 2015, the Comptroller changed its position about whether the AHTA preempts the Texas franchise tax as applied to AHTA revenues. (2RR:185.) The Comptroller's staff encouraged American to file its 2015 franchise tax report under protest and then to file a refund suit to expedite resolution of the dispute. (2CR:548.) American did so, and the case was docketed as Cause No. D-1-GN-15-003101. (1CR:3.) American's 2015 franchise tax report included American's gross receipts from baggage fees, but it did not include gross receipts from passenger ticket sales or freight transportation. (PX2; 2RR:55.) Despite the Comptroller staff's encouragement of this procedure, the Comptroller filed a plea to the jurisdiction, arguing that American had not exhausted its administrative remedies. (1CR:21.)

The Comptroller refunded American $107,577.04—the amount of franchise tax attributable to the inclusion of the gross receipts from baggage fees in the 2015 report. (2RR:60.) The Comptroller then issued a determination that American owed the $107,577.04 and demanded immediate payment. (2RR:60.) American repaid the $107,577.04 under protest and filed suit, which was docketed as Cause No. D-1-GN-16-000621. (2CR:4.) The refund, determination, and repayment under protest resolved any issues about the

trial court's jurisdiction to consider American's complaints. In the new case, the Comptroller counterclaimed arguing that American should have included the gross receipts from passenger ticket sales and freight transportation in its franchise tax calculation and seeking recovery of additional franchise tax. (2CR:28.) The two cases were consolidated. (1CR:38.)

**(3) The Trial Court's Judgment, Findings of Fact, and Conclusions of Law**

The case was tried over two days without a jury. (1RR:1.) The trial court heard testimony from American's chief tax officer (2RR:51–52) and from two Comptroller employees. (2RR:172–73; 3RR16.) The court rendered judgment for American on the refund of the franchise tax paid under protest. (2CR:232.) The court also rendered judgment that the Comptroller take nothing on his counterclaim. (2CR:232.)

The Comptroller requested findings of fact and conclusions of law (2CR:234), which the trial court made and filed. (2CR:546.) The trial court concluded that the Texas franchise tax is a gross-receipts tax as applied to American's AHTA revenues. (2CR:549–50.) The trial court's key finding is Finding of Fact 8:

> There are no deductions or exclusions from American's revenues from passenger ticket sales, passenger baggage fees, and freight transportation. American would pay the franchise tax

on 70% of the gross receipts from those sources that are apportioned to the State of Texas.

(2CR:547.) Based on that finding, the court concluded that the AHTA preempts the Texas franchise tax as applied to those receipts. (2CR:549–50.) As a result, the court rendered judgment that American recover the franchise tax it paid under protest. (2CR:232.) The court also rendered judgment that the Comptroller take nothing on his counterclaim. (2CR:232.)

## SUMMARY OF THE ARGUMENT

This case depends on the answer to a narrow question—is the Texas franchise tax a gross-receipts tax as it applies to American's AHTA revenues? The answer is yes, which means that the AHTA preempts the franchise tax as to those receipts.

The AHTA bars states from levying or collecting a tax on the gross receipts from air commerce or air transportation. That bar applies to any gross-receipts tax, whatever label the state gives it. Courts have held that the AHTA preempts taxes labeled as "property tax" or "franchise tax" when those taxes were, in fact, gross-receipts taxes. The Comptroller himself has recognized that the Texas sales tax is a gross-receipts tax and that the AHTA preempts that tax as applied to air commerce or air transportation.

There is no dispute that the AHTA revenues are receipts from air commerce or air transportation. And the trial court made a fact finding that there are no deductions or exclusions from American's gross receipts from these sources in calculating the amount of franchise tax due. Accordingly, the trial court correctly concluded that, as to these sources, the franchise tax is a gross-receipts tax, and it is preempted by the AHTA.

To avoid this straightforward result, the Comptroller attempts to change the question and to confuse the issue. The Court should reject these efforts, as the trial court did. The Comptroller attempts to change the question by arguing that the preemption analysis must be made by looking at American's entire business, rather than individual revenue sources. But the Comptroller cites no authority for this assertion and ignores the case most on point. A New York appellate court held that the AHTA preempts the portion of a franchise tax that taxes gross receipts from air commerce or air transportation, while leaving the remainder of the franchise tax in place.

The Comptroller next argues that the Texas franchise tax is not preempted because it is not specifically directed at air commerce or air transportation. But the AHTA's preemption is not limited to taxes specifically directed at airlines. Even the Comptroller has recognized that the AHTA

preempts sales tax on air commerce or air transportation, even though the sales tax is not specifically directed at air commerce or air transportation.

The Comptroller next argues that the franchise tax is not a gross-receipts tax because there are limited exclusions and deductions from "total revenue" before the amount of tax is determined. There are two primary problems with this argument. First, as the Comptroller's witness admitted at trial, the purpose of these deductions and exclusions is to remove items from "total revenue" that are not actually received by the taxpayer or that are taxed elsewhere. These deductions and exclusions are not actually receipts. Second, in Finding of Fact 8, the trial court found that none of these deductions or exclusions applies to the AHTA revenues. Thus, the deductions and exclusions do not change the franchise tax's nature as a gross-receipts tax as applied to the AHTA revenues.

The Comptroller also seeks to challenge Finding of Fact 8. But there is much more than sufficient evidence for that finding, including testimony from one of the Comptroller's witnesses. The Comptroller ignores that testimony. Instead, he focuses on his counterfactual "Catch-22" argument. According to the Comptroller, if the AHTA revenues are excluded from "total revenue," the franchise tax would be calculated differently. The Comptroller posits that

compensation would be deducted from "total revenue" in this alternative calculation and prove that the franchise tax is not a gross-receipts tax. This "Catch-22" argument is nonsensical. If AHTA revenues are excluded from the franchise tax, then American would not be arguing that the tax violates the AHTA. It would not matter how the tax would be computed in that counterfactual scenario; American's AHTA revenues would not be taxed. There is no "Catch-22."

Finally, the Comptroller points to other portions of the franchise tax calculation to argue that the franchise tax is not a gross-receipts tax on the revenues at issue. But those calculations do not change the tax's nature as a gross-receipts tax as applied to American's AHTA revenues. First, the 70% adjustment does not prevent the tax from being a gross-receipts tax. Even with the percentage reduction of "total revenue," American is still being taxed on its gross receipts from air commerce or air transportation. If the state instead reduced the applicable tax rate by 30%, it would result in the same tax being due. Second, the apportionment of revenues between Texas sources and non-Texas sources is immaterial. After apportionment, American would still be taxed on the Texas portion of its gross receipts from air commerce or air transportation. Third, it makes no difference that the tax rate depends on the

taxpayer's entire business. Whatever tax rate is applied, American would still be taxed on its gross receipts from air commerce or air transportation.

The trial court correctly rejected the Comptroller's efforts to muddle the sole issue here. The Texas franchise tax would levy a tax on American's gross receipts from air commerce or air transportation. The AHTA therefore preempts the franchise tax as it applies to American's AHTA revenues. This Court should affirm the trial court's judgment.

## ARGUMENT

**1. The AHTA preempts state taxes on the gross receipts from air commerce or transportation, regardless of the label the state gives to the tax.**

### A. The AHTA forbids states from taxing gross receipts from air commerce or transportation.

The AHTA prohibits a state from levying or collecting

a tax, fee, head charge, or other charge on—

(1) an individual traveling in air commerce;

(2) the transportation of an individual traveling in air commerce;

(3) the sale of air transportation; or

(4) the gross receipts from that air commerce or transportation.

49 U.S.C. § 40116(b).[3] The AHTA's purpose is to prevent double taxation on air travelers and the interstate air transportation industry. *See Aloha Airlines, Inc. v. Dir. Of Tax'n of Hawaii*, 464 U.S. 7, 9–10 (1983) (citing the legislative history of the AHTA's predecessor statute, 49 U.S.C. § 1513)).

Courts have repeatedly held that the AHTA preempts state taxes on gross receipts from air commerce or air transportation. *See Aloha Airlines*, 464 U.S. at 13–14 (rejecting Hawaii's attempt to impose a "property tax" on airline revenues because the tax was measured by gross receipts); *Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 824 (Mo. 2014) (holding that the AHTA preempted Missouri sales tax on gross receipts from hot air balloon rides); *Air Transp. Ass'n of Am. v. New York State Dep't of Tax'n & Fin.*, 91 A.D.2d 169, 170–71 (N.Y. App. Div. 1983) (holding that the AHTA preempted New York franchise tax on gross earnings in the state to the extent it included gross receipts from air carriage); *Kamikawa v. Lynden Air Freight, Inc.*, 968 P.2d 653, 657 (Haw. 1998) (noting that Hawaii's general excise tax

---

[3]   In 2018, after American filed suit, Congress amended the AHTA. FAA Reauthorization Act of 2018, Pub. L. No. 115-254, § 159, 132 Stat. 3186, 3220 (2018) (amending 49 U.S.C. § 40116 (1996)). As noted in the Comptroller's opening brief, the 2018 amendment does not affect the issue in this case. Therefore, references to 49 U.S.C. § 40116 in this brief are to the statute's current version.

was preempted by federal law to the extent it taxed revenue from air transportation). In fact, the Comptroller himself, in an administrative proceeding, concluded that the imposition of sales tax on skydiving revenue is preempted by the AHTA. *See* State Office of Admin. Hearings Dkt. No. 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.26, Comptroller of Public Accounts, 2017 WL 3842067, at \*7 (May 3, 2017).

### B. AHTA preemption applies no matter how the state labels the tax.

The AHTA does permit certain taxes, including franchise, property, and sales taxes. 49 U.S.C. § 40116(e)(1). But a state cannot disguise an impermissible gross-receipts tax simply by giving it the label of a permissible tax. *See Aloha Airlines, Inc.*, 464 U.S. at 13–14. In *Aloha Airlines*, the United States Supreme Court considered whether the State of Hawaii could impose what the state termed a "property tax" on airlines. *Id.* at 10–11. The statute stated that the tax was

> a means of taxing the *personal property* of the airline or other carrier, tangible and intangible, including going concern value, and is in lieu of the [general excise] tax imposed by chapter 237 but is not in lieu of any other tax.

*Id.* (quoting Haw. Rev. Stat. § 239–6 (1976) (emphasis added; modification in original)). The tax imposed was "four per cent [sic] of [the airline's] gross income each year from the airline business." *Id.*

In the Supreme Court, Hawaii argued that the tax was not preempted because it was styled as a "property tax," which is permissible under the AHTA. *Id.* at 13. Hawaii asserted that the tax was "a property tax measured by gross receipts rather than a straight-forward gross receipts tax." *Id.* The Supreme Court rejected that argument. *Id.* The Court reasoned that "the manner in which the state legislature has described and categorized" the tax could not disguise that it "impose[d] a levy upon the gross receipts of airlines." *Id.* at 13–14. The Court held that it was "beyond question" that the state was taxing gross receipts and that the AHTA therefore preempted the tax. *Id.* at 14.

Similarly, in *Air Transportation Association*, the New York appellate court addressed whether the AHTA preempted a tax on air carriers that was labeled a "franchise tax." *Air Transp. Ass'n*, 91 A.D.2d at 170. The court rejected the state's argument that the tax was permissible because it was called a "franchise tax." *Id.* at 171. The court looked at how the tax was calculated and held that the AHTA preempted the portion of the tax on gross receipts from air commerce or air transportation. *Id.*

The Comptroller has also ruled that the AHTA preempts the sales tax when applied to gross receipts from skydiving jumps. State Office of Admin. Hearings Dkt. No. 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.26, 2017 WL 3842067, at *7.

Thus, a state cannot avoid the AHTA by giving a gross-receipts tax applied to air commerce or air transportation a different label. The preemption analysis requires looking at whether the tax imposed on air commerce or air transportation is "measured by gross receipts." *Aloha Airlines*, 464 U.S. at 14. And as the trial court correctly held, a tax on air commerce or air transportation measured by gross receipts is preempted.

2. **As applied to American's AHTA revenues, the franchise tax is an improper gross-receipts tax.**

A. **There is no dispute that the AHTA revenues are receipts from air commerce or transportation.**

The parties agree that the AHTA revenues are receipts from "air commerce or transportation." 49 U.S.C. § 40116(b)(4). The trial court found that American is an air carrier that transports people and property by aircraft both interstate and internationally. (2CR:228; *see also* 49 U.S.C. § 40102(a)(2) (defining "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation")). It also found that American collects revenue from transporting passengers, from transporting baggage, and from transporting freight on flights operating in federal

airways. (2CR:228.) Finally, the trial court found that "transporting people, baggage, and freight by air constitutes air commerce and air transportation under the AHTA." (*Id.*; *see also* 49 U.S.C. § 40102(a)(3), (5), (22)–(25) (defining "air transportation" and "air commerce" to include "transportation of passengers or property by aircraft … for compensation").) The Comptroller has not challenged these findings.

### B. As the trial court properly held, the franchise tax is illegally imposed on the AHTA revenues.

The basic process for determining the franchise tax is:

- **Step 1:** Determine "total revenue."

- **Step 2**: Determine the *lesser* of: (1) seventy percent of total revenue; (2) total revenue less cost of goods sold; (3) total revenue less $1 million; or (4) total revenue less compensation.

- **Step 3**: Multiply the amount from Step 2 by the percentage of gross receipts apportioned to the entity's Texas business.

- **Step 4**: Multiply the amount from Step 3 by the applicable tax rate.

*See* TEX. TAX CODE §§ 171.101(a)(1)–(3).[4] "Total revenue" begins with the taxpayer's total revenue reportable on its federal income tax return. *See id.* § 171.1011(c)(1)(A). The Comptroller has stated that "total revenue" and "gross receipts" are "almost always" synonymous. (PX18 ("Everywhere

---

[4] *See also* 2CR:228.

Gross Receipts will almost always equal Total Revenue."); 2RR:185–86, 206 (testimony of Theresa Bostick).) The Texas Tax Code similarly recognizes that "gross receipts" equals revenues reportable on a federal tax return. *See* Tex. Tax Code § 171.1121 (providing that "'gross receipts' means all revenues reportable … on [a taxpayer's] federal tax return"); 34 Tex. Admin. Code § 3.591(b)(3) (defining "gross receipts" as the amount determined as total revenue, with certain, limited exclusions).

The statute does allow certain limited exclusions from the "total revenue" shown on the federal tax return, such as returns and allowances, bad-debt expense, and foreign royalties and dividends. *See* Tex. Tax Code § 171.1011(c)(1)(B). But those exclusions do not make "total revenue" different from "gross receipts." At trial, Theresa Bostick (a Comptroller employee) conceded that the exclusions from the taxpayer's total revenue as shown on its federal return "are either excluded because they were never actually receipts by the taxpayer or because they're taxed elsewhere." (2RR:209–11.)

American's "total revenues" from the AHTA revenues are identical to its "gross receipts" from those sources. (2RR:80–81.) None of the exclusions from "total revenue" permitted by the Tax Code applies to the revenues from

these sources. (*Id.*) Ms. Bostick testified at her deposition that she was unaware of any revenue exclusions that specifically applied to the AHTA revenues. (2RR:209.) Thus, all of American's gross receipts from these sources are included in total revenue for purposes of calculating the Texas franchise tax. The Comptroller agrees that if American's AHTA revenues are included in "total revenue," American is required to use the 70% adjustment at Step 2. (3RR:36.)[5]

In sum, if "total revenue" includes the AHTA revenues, the Texas franchise tax is a tax on American's gross receipts from air transportation or air commerce, and it violates the AHTA. *See* 49 U.S.C. § 40116(b)(4); *Aloha Airlines, Inc.*, 464 U.S. at 13–14; *Balloons Over the Rainbow, Inc.*, 427 S.W.3d at 824; State Office of Admin. Hearings Dkt. No. 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.26, 2017 WL 3842067, at *7. The Court should therefore affirm the trial court's judgment.

## C. Contrary to the Comptroller's assertion, this Court can decide that the AHTA bars taxation of discrete revenue streams.

The Comptroller is correct that preemption is a question of law that this Court reviews de novo. *See, e.g., Skilled Craftsmen of Tex., Inc. v. Tex. Workers'*

---

[5]     In fact, the Comptroller's alternative tax calculation (which includes American's AHTA's revenues) uses the 70% adjustment. (*See* PX19 at Tab TAS-Margin (App. 21 to Comptroller's Br.).)

*Comp. Comm'n*, 158 S.W.3d 89, 93 (Tex. App.—Austin 2005, pet. dism'd). But the Comptroller is wrong in arguing that preemption must be construed narrowly. (Comptroller Br. at 11, 16.) Instead, the Court should apply the AHTA as written, discerning Congressional intent from the words Congress chose to use. *Skilled Craftsmen*, 158 S.W.3d at 93. "When Congress clearly manifests its intent to preempt state regulation, however, the supremacy clause grants it that power." *Secured Env't Mgmt., Inc. v. Tex. Nat. Res. Conservation Comm'n*, 97 S.W.3d 246, 251–52 (Tex. App.—Austin 2002, pet. denied) (citing *Boggs v. Boggs*, 520 U.S. 833, 844 (1997)). Contrary to the Comptroller's assertion, the AHTA is susceptible to only one meaning. Congress spoke clearly —states are not allowed to impose a tax on the gross receipts from air commerce or air transportation. 49 U.S.C. § 40116(b).

The Comptroller attempts to avoid the question here by arguing that the franchise tax applies to the entirety of American's business. (Comptroller Br. at 15–16, 18.) But American is not challenging Texas's ability to impose the franchise tax on American's revenues other than AHTA revenues; it is challenging only the application of the Texas franchise tax to those air commerce or air transportation revenues.

Rather than address that issue, however, the Comptroller focuses on the franchise tax as applied to American's entire business and on the statutory scheme as a whole. (Comptroller Br. at 15–16, 17–18.) In a not-so-subtle attempt to reframe the issue, the Comptroller argues that the franchise tax is applied to the business as a whole and cannot be separated out and considered with respect to individual transactions (baggage fee, airfare, and freight revenues). (*Id.*) He then contends that the Texas franchise tax as a whole is not a gross-receipts tax, so imposing the franchise tax on American's AHTA revenues cannot be preempted by the AHTA. (*Id.*)

Tellingly, the Comptroller cites no authority for his argument that the Court cannot consider whether the AHTA bars taxation of American's AHTA revenues. (Comptroller Br. at 17–18.)[6] The Comptroller instead ignores the case most like this case, which held that the AHTA preempts the portion of a franchise tax that taxes gross receipts from air commerce or air transportation, while leaving the remainder of the franchise tax in place. In *Air Transport Association*, the tax at issue was labeled a "franchise" tax. 91 A.D.2d

---

[6]    The Comptroller cites two cases for the proposition that the franchise tax is a "margin" tax. (Comptroller Br. at 5, 9 (citing *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 38 (Tex. 2020); *Hegar v. Gulf Copper & Mfg. Corp.*, 601 S.W.3d 668, 673 (Tex. 2020)).) Neither of these cases addresses the issues presented in this appeal. And as discussed in Section 1.B., the label applied to the tax is immaterial.

at 170. The state's "central argument" was that "the gross earnings of [the franchise tax] are not entirely composed of gross receipts from the sale of air coverage, but have other components." *Id.* at 170. Even though the tax included gross receipts in its measurement, the state claimed that it was not a gross-receipts tax prohibited by the AHTA. *Id.* The court rejected that argument because the AHTA's plain language preempts any taxation of gross receipts, even if they are only a part of the tax's calculation. *Id.* The court therefore held that the AHTA required the state to exclude gross receipts from air commerce or air transportation in the franchise tax calculation. *Id.*

Just as the trial court did, this Court should reject the Comptroller's attempt to frame the issue as implicating the franchise tax as a whole. As shown in Section 2.B. and discussed in Section 3, the Comptroller is simply wrong when he claims that the question here "is not determinable." (Comptroller Br. at 18.) If the Court focuses on the narrow issue in this lawsuit, it cannot escape the conclusion that the Comptroller seeks to tax American's gross receipts from air commerce and air transportation.

3. **The Comptroller's other arguments are unavailing.**

The Comptroller posits several other arguments to try to avoid this straightforward application of the AHTA. Relying on the United States

Supreme Court's decision in *Aloha Airlines*, the Comptroller argues that "neither the purpose nor the effect of the Texas franchise tax is to impose a tax on the gross receipts of airlines." (Comptroller Br. at 14–15.) He also repeatedly asserts that the AHTA does not bar the franchise tax because it is a tax on the entire business rather than a tax on gross receipts. (Comptroller Br. at 9, 15, 18, 25–26, 38.) But the AHTA is not limited to taxes directed specifically at airlines. And as discussed in Sections 1.B. and 2.C., a state cannot avoid the AHTA by including an impermissible gross-receipts tax as a component of a franchise tax or by labeling a gross-receipts tax as a franchise tax. Moreover, none of the Comptroller's arguments negates that he would levy the Texas franchise tax on American's AHTA revenues. In Finding of Fact 8, the trial court correctly found that there are no deductions or exclusions from American's AHTA revenues. The Texas franchise tax is therefore a gross-receipts tax on those revenues. The Court should disregard the Comptroller's attempts to confuse the issues.

A. **The AHTA preempts gross-receipts taxes of general applicability to the extent they seek to tax air commerce or air transportation.**

The Comptroller argues that the Texas franchise tax is different from the tax at issue in *Aloha Airlines* because the Texas franchise tax is not a special

tax on airlines. (Comptroller Br. at 15.) That is a distinction that makes no difference. The AHTA preempts gross-receipts taxes on air commerce or air transportation, regardless of whether they are specifically targeted at airlines. Nothing in *Aloha Airlines* suggests that the tax's specific nature affected the result. 464 U.S. at 12–14. To the contrary, the Supreme Court focused only on the fact that Hawaii imposed a gross-receipts tax on air commerce or air transportation. *Id.*

This argument is also belied by the Comptroller's own decision that the AHTA preempted the sales tax as applied to gross receipts from skydiving jumps. State Office of Admin. Hearings Dkt. No. 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.26, 2017 WL 3842067, at *7. The sales tax is not directed at a specific industry or type of commerce. Yet the Comptroller concluded that it was preempted by the AHTA to the extent that it applied to "air commerce." *Id.* at *8.

Similarly, courts in other states have found that generally applicable taxes were preempted because they constituted gross-receipts taxes. In *Balloons Over the Rainbow*, the Missouri Supreme Court considered whether the AHTA precluded the application of Missouri's sales tax to the sale of hot-air balloon rides. 427 S.W.3d at 818. The tax statute at issue was not specifically aimed at airlines; it imposed a tax on "all sellers for the privilege of engaging

in the business of selling tangible personal property or rendering taxable service at retail in this state." *Id.* at 820 (quoting tax statute). It was not a tax directed specifically at hot air ballooning or even air commerce. *Id.* The Missouri Supreme Court concluded that hot air ballooning constituted "air commerce" for the AHTA's purposes. *Id.* at 824. As a result, the Court held that the AHTA preempted the sales tax to the extent it applied to the sale of hot air balloon rides. *Id.*

In *Kamikawa*, the Hawaii Supreme Court addressed whether the AHTA preempted a general excise tax as applied to a freight forwarder. 968 P.2d at 654. Although the court held that the AHTA did not preempt the tax to extent it was levied on non-air services, the court stated that it felt "compelled to reiterate that the State may *not* assess taxes against the gross receipts that [the freight forwarder], or any other taxpayer, derives from 'the sale of air transportation.'" *Id.* at 659 (quoting the AHTA).

The Court should therefore reject the Comptroller's attempt to avoid preemption because the franchise tax is a generally applicable tax rather than a special tax on air commerce or air transportation.

**B. The limited exclusions from "total revenue" do not preclude preemption.**

The Comptroller next argues that the franchise tax is not a gross-receipts tax because it allows exclusions or deductions from total revenue. (Comptroller Br. at 28.) But limited deductions and exclusions from gross receipts—such as bad debt expense or returns and allowances—do not prevent a tax from being a gross-receipts tax. The Comptroller has already concluded that the sales tax is a gross-receipts tax and that the AHTA preempts the sales tax on revenues from skydiving. *See* State Office of Admin. Hearings Dkt. No. 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.26, 2017 WL 3842067, at *7. Like the franchise tax, the sales tax also allows certain limited exclusions or adjustments in calculating the tax. *See* Tex. Tax Code §§ 151.007(c)(2)-(3), 151.426, 151.4261. For example, Texas's sales tax allows various exclusions and adjustments, such as for returns and allowances or bad debts. *See, e.g.*, Tex. Tax Code §§ 151.301–.3595 (outlining various exemptions); *id.* § 151.426 (allowing adjustments for bad debts, returned merchandise, and repossessions). Those deductions did not affect the Comptroller's conclusion that the AHTA preempted the sales tax on skydiving.

And, as discussed in Section 2.B. above, the exclusions from total revenue for franchise-tax purposes "are either excluded because they were never

actually receipts by the taxpayer or because they're taxed elsewhere." (2RR:209–11.) Thus, any exclusions do not prevent the franchise tax from being a gross-receipts tax.

The Comptroller also argues that some amounts that are included in total revenue for federal income tax purposes are "net" revenues that necessarily include deductions for losses. (Comptroller Br. at 30.) This argument is immaterial to the issue here because the evidence conclusively establishes that there are no deductions from the AHTA revenues. As discussed more fully in section 3.C., the evidence fully supports the trial court's finding that there are no deductions from these receipts when calculating the franchise tax on those receipts. Thus, the Court can disregard the Comptroller's discussion of the different lines on the franchise tax report. (Comptroller's Br. at 28–32.) Whatever other amounts are included in "total revenue" for franchise-tax purposes, the evidence establishes that the Comptroller wants to tax the gross receipts from American's AHTA revenues. The AHTA prohibits the state from levying a tax on those gross receipts.

## C. There is more than sufficient evidence to support Finding of Fact 8.

The Comptroller has challenged Finding of Fact 8. (Comptroller Br. at 19.) In that finding, the trial court found that

There are no deductions or exclusions from American's revenues from passenger ticket sales, passenger baggage fees, and freight transportation. American would pay the franchise tax on 70% of the gross receipts from those sources that are apportioned to the State of Texas.

(2CR:547.) This finding underpins the trial court's conclusion that the franchise tax is a gross-receipts tax when applied to the AHTA revenues. Because there are no deductions from those receipts, the franchise tax is a gross-receipts tax on American's AHTA revenues, and it is therefore preempted by the AHTA.

To succeed on its legal sufficiency challenge, the Comptroller must show that

(1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 640 (Tex. 2023). To succeed on its factual sufficiency challenge, the Comptroller must show that "the evidence that supports the finding is so weak or so contrary to the overwhelming weight of the evidence as to make the verdict clearly wrong and manifestly unjust." *Arraby Props., LLC v. Brown*, 695 S.W.3d 532, 540 (Tex.

App.—Houston [1st Dist.] 2023, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). The Comptroller cannot carry either burden.

Both legal and factual sufficiency require the Court to consider the evidence that supports the finding. *E.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The Comptroller makes no effort to discuss the evidence that supports Finding of Fact 8. (Comptroller Br. at 19–25.) The finding is based on testimony from Patrick Smith, American's Chief Tax Officer. (2RR:52.) He testified that there were no deductions taken from the AHTA revenues:

> Q. Mr. Smith, were there any—going back to the calculation of the franchise tax imposed on bag fees and other transportation items, in that top number where it shows the total receipts from baggage fees and if you also included ticket sales and freight transportation, are there any deductions or exclusions made from those specific buckets of gross receipts?
>
> A. There are not, no. It's based on 100 percent of those gross receipts.

(2RR:80–81.) By itself, this testimony is more than sufficient to support Finding of Fact 8.

The trial court also heard evidence that Ms. Bostick (the Comptroller's employee) testified at her deposition that she was unaware of any revenue exclusions that specifically applied to the AHTA revenues. (2RR:209.) While Ms. Bostick tried to backtrack from that testimony at trial, the court permissibly credited her prior testimony and discredited her attempt to avoid it.

*See, e.g.*, *Syed v. Masihuddin*, 521 S.W.3d 840, 848 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("When the testimony of witnesses is conflicting, we will not disturb the credibility determinations made by the fact finder, and we will presume that it resolved any conflict in favor of the verdict.").

In short, there is much more than sufficient evidence to support the trial court's finding that there were no deductions or exclusions from American's AHTA revenues.

Rather than address the evidence supporting Finding of Fact 8, the Comptroller bases his argument challenging the finding on his "Catch-22" argument. (Comptroller Br. at 19–25.) He asserts that no evidence supports Finding of Fact 8 because the franchise tax would be calculated using the compensation deduction if the AHTA revenues are not included in "total revenue." (*Id.*) This is not an attack on the sufficiency of the evidence to support Finding of Fact 8. And as discussed in Section 3.D., this argument cannot result in the reversal of trial court's judgment. The Court's analysis of the issues must therefore be based on Finding of Fact 8.

Finding of Fact 8 undercuts much of the Comptroller's argument on appeal. The Comptroller's arguments about the calculation of "total revenue" and the margin determination all hinge on the Comptroller's assertion

that these calculations somehow mean that the franchise tax is not being imposed on American's AHTA revenues. (Comptroller Br. at 27–32.) But there are no deductions or exclusions from those gross receipts to reach "total revenue." And if those receipts are included in "total revenue," then the only statutory method for determining the margin is the 70% adjustment. For the reasons discussed in Section 3.E., the 70% adjustment still would result in the Comptroller levying a gross-receipts tax on those receipts. In sum, because there is more than sufficient evidence to support Finding of Fact 8, the Comptroller's arguments about the franchise tax calculation cannot support reversing the trial court's judgment.

### D. The Comptroller's "Catch-22" argument is nonsensical.

The Comptroller next asserts that American's argument about gross receipts creates a supposed "Catch-22." (Comptroller Br. at 19–25.) The Comptroller posits that if the AHTA revenues are excluded from "total revenue," then the 70% adjustment to "total revenue" would no longer produce the lowest margin. (*Id.*) Instead, according to the Comptroller, deducting compensation would result in a lower margin. (*Id.*) And in that event, the Comptroller asserts, there would be deductions from the AHTA revenues. (*Id.*)

This argument suffers from two fatal flaws. First, it is internally inconsistent. If the AHTA revenues are removed from "total revenue" and if compensation is deducted from "total revenue" to reach the taxable margin, there would still be no deduction from the AHTA revenues because those receipts will have already been removed from the calculation. Thus, the deduction for compensation that the Comptroller wants to rely on for this argument would apply *only* if the AHTA revenues are *not* included in "total revenue." But if those receipts are not included in "total revenue," then there would be no issue before this Court because the Comptroller would not be attempting to levy a tax in violation of the AHTA.

If, on the other hand, those receipts are included in "total revenue" (as the Comptroller insists they should be), then the 70% adjustment would still apply. And then there would be no deductions or exclusions from the gross receipts from the AHTA revenues, so the franchise tax would be a gross-receipts tax on those receipts. Thus, under the Comptroller's own argument about how the receipts should be treated, the franchise tax is a gross-receipts tax.

Second, the entire exercise of the alternative calculation is irrelevant. The question before the Court is not what would happen if the AHTA revenues

are not included in the franchise tax calculation. The question is whether, if the AHTA revenues are included, the franchise tax is an impermissible gross-receipts tax. Thus, the only relevant analysis is how those receipts are treated if they are included in "total revenue." And as discussed above, there are no deductions or exclusions from those receipts, so the franchise tax is an impermissible gross-receipts tax of those receipts.

### E. The 70% adjustment does not change the analysis.

The Comptroller next argues that the application of an adjustment to "total revenue" means that the franchise tax is not a gross-receipts tax. (Comptroller Br. at 32.) The only adjustment that the Court needs to consider is the 70% adjustment.[7] As discussed in Section 2.B., above, if the AHTA revenues are included in "total revenue," the only option for Step 2 of the franchise tax calculation is applying the 70% adjustment because that option yields the lowest number.

When the 70% adjustment is applied, American would still be taxed on its gross receipts from air commerce or air transportation. The trial court heard evidence that, mathematically, the 70% adjustment is equivalent to applying a

---

[7] The Comptroller asserts that the cost of goods sold deduction should also be taken into account. (Comptroller Br. at 25, 32.) But American had no cost of goods sold. (PX7 at line 2.)

lower tax rate. Rather than applying a 70% adjustment to "total revenue," the state could have simply lowered the tax rate by 30%. (2RR:201–03.)[8] Thus, a tax on a fixed percentage of gross receipts from air commerce or air transportation is still a gross-receipts tax preempted by the AHTA. The trial court correctly rejected the Comptroller's argument that the 70% adjustment changes the franchise tax's nature and causes it to no longer be preempted by the AHTA.

### F. The other parts of the franchise tax determination do not affect the analysis.

The Comptroller finally points to two other aspects of the franchise tax calculation. First, the statute requires application of a formula to apportion a part of the revenues to Texas. Second, the statute provides for different tax rates depending on the type of business and the amount of apportioned revenues. *See* TEX. TAX CODE §§ 171.101(a)(1)–(3). The Comptroller argues that these calculations require looking at the business as a whole, so the

---

[8] That is, if the taxable amount is $10, the 70% adjustment would make it $7. If all that revenue is apportioned to Texas and the tax rate is 1%, the tax due would be $0.07. But if instead of making the 70% adjustment to the taxable amount, the State made a similar adjustment to the tax rate (making it 0.7% instead of 1%), the resulting tax would be the same. (2RR:202–06.)

Court cannot determine whether the franchise tax is a gross-receipts tax on the AHTA revenues. (Comptroller Br. at 33–36.) Not so.

First, apportioning revenues between Texas sources and non-Texas sources does not affect the tax's nature. In *Kamikawa*, the general excise tax at issue apportioned revenues between Hawaiian and non-Hawaiian sources. 968 P.2d at 655. Even so, the Hawaii Supreme Court held that an excise tax on receipts from air transportation violated the AHTA. *Id.* at 659. Thus, apportionment does not affect the AHTA's application.

Moreover, the franchise tax as applied to American's AHTA revenues is a gross-receipts tax, even though it taxes only gross receipts related to activities in Texas. The apportionment factor would be applied to American's AHTA revenues based on a fraction that includes the gross receipts in Texas in the numerator and the gross receipts from American's entire business in the denominator. The franchise tax remains a tax on the gross receipts from the AHTA revenues.

Second, the Comptroller argues that determining the proper tax rate also requires looking at the taxpayer's entire business, so the Court cannot determine whether the franchise tax is a gross-receipts tax as applied to American's revenues at issue. (Comptroller Br. at 35.) But calculating the

proper tax rate has even less impact on determining whether Texas would be levying a gross-receipts tax on American's AHTA revenues. Whatever tax rate applies, the rate applies to the gross receipts from those revenue sources. The need to look at the entire business to determine the proper tax rate is therefore irrelevant to the issue before the Court.

**4. The trial court correctly rejected the Comptroller's counterclaim.**

In addition to seeking to tax baggage fees, the Comptroller seeks to tax the receipts from passenger ticket sales and freight transportation. (Comptroller Br. at 36–38.) As discussed above, although American's calculation of its franchise tax for report year 2015 included receipts from baggage fees under protest, the calculation did *not* include receipts from passenger ticket sales and freight transportation. (PX2; 2RR:55.) Thus, in addition to opposing American's claim for a refund of the tax paid on baggage fees, the Comptroller brought a counterclaim seeking to recover additional franchise tax on the gross receipts from passenger ticket sales and freight transportation. (2CR:29.) Because the trial court correctly concluded that American can exclude gross receipts from baggage fees in calculating its franchise tax liability, it also correctly rejected the Comptroller's counterclaim. The Court should

therefore affirm the trial court's judgment that the Comptroller take nothing on its counterclaim. (2CR:232.)

## Conclusion

This Court should affirm the trial court's judgment for the simple reason that the Texas franchise tax as applied to American's AHTA revenues is a gross-receipts tax that is preempted by the AHTA. The trial court correctly found that there are no deductions or exclusions from those receipts in the calculation of the franchise tax, and the Comptroller's challenge to that fact finding must fail. The Court should therefore reject the Comptroller's efforts to avoid this clear-cut analysis and affirm the judgment in its entirety. American further requests general relief.

Dated: April 7, 2025

Respectfully submitted,

Holland & Knight LLP

By: */s/ Richard B. Phillips, Jr.*
 Mary A. McNulty
 State Bar No. 13839680
 Mary.McNulty@hklaw.com

 Leonora Meyercord
 State Bar No. 24074711
 Lee.Meyercord@hklaw.com

 Richard B. Phillips, Jr.
 State Bar No. 24032833
 Rich.Phillips@hklaw.com

One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214-964-9500
Fax: 214-964-9501

**Counsel for Appellee**

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e), because it has been prepared in Equity font in 14-point for text and 13-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), because it contains 7,204 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Phillips on behalf of Richard Phillips Jr.
Bar No. 24032833
Rich.Phillips@hklaw.com
Envelope ID: 99384139
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellee
Status as of 4/8/2025 7:56 AM CST

Associated Case Party: GLENN HEGAR COMPTROLLER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ray Langenberg | 11911200 | ray.langenberg@cpa.texas.gov | 4/7/2025 8:50:02 PM | SENT |
| Kyle PierceCounce | | kyle.counce@oag.texas.gov | 4/7/2025 8:50:02 PM | SENT |
| Deborah Rao | | Deborah.Rao@oag.texas.gov | 4/7/2025 8:50:02 PM | SENT |
| Alyson "Ally" Thompson | | ally.thompson@oag.texas.gov | 4/7/2025 8:50:02 PM | SENT |

Associated Case Party: AMERICAN AIRLINES, INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 4/7/2025 8:50:02 PM | SENT |
| Leonora Meyercord | 24074711 | Lee.Meyercord@hklaw.com | 4/7/2025 8:50:02 PM | SENT |
| Mary McNulty | 13839680 | Mary.McNulty@hklaw.com | 4/7/2025 8:50:02 PM | SENT |
| Meghan McCaig | | meghan.mccaig@hklaw.com | 4/7/2025 8:50:02 PM | SENT |